[No. B050677. Second Dist., Div. Seven. May 24, 1991.]

MARSHA V., Plaintiff and Appellant, v.
HAROLD E. GARDNER, Defendant and Respondent.

**COUNSEL**

Patricia A. Gray and Donna Gaetano for Plaintiff and Appellant.

Sharon Lybeck Hartmann, Jon W. Davidson, Paul L. Hoffman, Hufstedler, Kaus & Beardsley, Dennis M. Perluss and Cynthia L. Jirgensons as Amici Curiae on behalf of Plaintiff and Appellant.

Cosgrove, Michelizzi, Schwabacher, Ward & Bianchi and Frank G. Michelizzi for Defendant and Respondent.

## OPINION

**WOODS (Fred), J.**—In her complaint, appellant alleged she was sexually molested by her stepfather beginning when she was eight years old and ending when she was seventeen years old. She filed her complaint 15 years later when she was 32 years old. The trial court, finding the delayed discovery doctrine inapplicable (*DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011 [242 Cal.Rptr. 368]), sustained without leave to amend respondent's demurrer. Appellant appeals from the judgment of dismissal. We affirm.

### PROCEDURAL AND FACTUAL BACKGROUND

On August 11, 1987, appellant filed a complaint in Sonoma County alleging two causes of action: personal injury and negligent infliction of emotional distress. By stipulation filed October 7, 1988, the parties agreed to transfer the matter to Los Angeles County. On February 10, 1989, asserting the statute of limitations barred the complaint, respondent filed a general demurrer. On March 10, 1989, the court sustained the demurrer without leave to amend. Appellant appealed. On January 24, 1990, in an unpublished opinion, we dismissed the appeal because, after the trial court sustained the demurrer without leave to amend, no judgment of dismissal had been entered. On appellant's motion the trial court dismissed the complaint and entered judgment. Appellant appeals from the judgment of dismissal.

As alleged, the facts are these. In 1963, when appellant was eight years old, respondent, her stepfather who lived with the family in their Lancaster home, began molesting her. The acts of molestation, which continued until 1972, when appellant was 17 years old, consisted of "fondling [her] breasts, pinching her buttocks, oral copulation, digital penetration of her vagina, masturbation aided by the child, violent struggle and insistent demands for sexual contact on a regular basis. These acts of sexual molestation were accompanied by violent threats of injury and bribery for sexual favors."[1]

■ As a result of respondent's acts, appellant developed over the nine-year sexual molestation period and continuing thereafter, "feelings of great shame, embarrassment, humiliation, fear, confusion about herself, guilt, self-blame, self-hate, anxiety, extreme depression, psychosomatic and sleep-related complaints, inability to differentiate between sex and affection, and difficulty forming meaningful trust relationships."

---

[1]The complaint does not further specify when, during the nine-year period, any of the alleged acts occurred, nor the number of times any act occurred.

The sexual molestation experience caused appellant "to feel trapped . . . isolated . . ." and "to repress, deny, and psychologically disassociate from her experience."

"As a result of [this] disassociation and [ ] psychological accommodation . . . she grew up without perceiving, knowing or understanding the existence and nature of the psychological and emotional injuries which [respondent's] conduct caused . . . her."

Only beginning on September 2, 1986, when appellant commenced intensive psychotherapy, did appellant discover "the relationship of the physical and mental distress she was suffering" to the acts of sexual molestation by respondent.

## DISCUSSION

### 1. *Standard of review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### 2. *Statutes of limitation*

Three statutes of limitation are relevant. Code of Civil Procedure section 352[2] tolls the limitation period until a person becomes 18 years old. Section 340 prescribes a one-year period to bring an action "for injury . . . caused by the wrongful act or neglect of another." And section 340.1 prescribes a

[2]Unless otherwise noted all statutory references are to the Code of Civil Procedure. In pertinent part the section provides:

"(a) If a person entitled to bring an action . . . be, at the time the cause of action accrued, either: [¶] 1. Under the age of majority . . . the time of such disability is not a part of the time limited for the commencement of the action."

three-year period to bring an action against a household or family member who commits certain sexual offenses.[3]

Since appellant alleged she was born April 1, 1955, the tolling period expired April 2, 1973 (§ 352) and the section 340.1 three-year limitation period expired April 2, 1976 (*Colleen L.* v. *Howard M.* (1989) 209 Cal.App.3d 542 [257 Cal.Rptr. 263]), over eleven years *before* appellant filed her complaint on August 11, 1987.

Thus, unless the limitation period was extended by delayed discovery or respondent is equitably estopped from asserting the limitation bar, the trial court correctly sustained the demurrer.

### 3. *Delayed discovery*

■ California law has long recognized delayed discovery. (*Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190 [98 Cal.Rptr. 837, 491 P.2d 421]; *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218].) Section 340.1, subdivision (d) expressly permits its application: "Nothing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor."

The doctrine arose from "concern for the practical needs of prospective plaintiffs. Our law has evolved . . . to a point where the limitations clock only begins to run on certain causes of action when the injured party discovers or should have discovered the facts supporting liability." (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 512 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].)

"Impelled by this concern for the pragmatic, we have drifted away from the view . . . that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong as a matter of substantive

---

[3]Only six categories of sexual misconduct are covered: 1. lewd acts with a child under 14 years old; 2. fornication; 3. sodomy; 4. oral copulation; 5. genital penetration with a foreign object; and 6. anal penetration with a foreign object (§ 340.1, subd. (a).) Categories 2 through 6 require that at the time of the act the victim-plaintiff be under 18 years old.

Of these six sexual misconduct categories, the complaint alleged respondent had committed three (lewd acts with a child under 14 years old, oral copulation, and genital penetration with a foreign object). Of the three, only two (oral copulation and genital penetration with a foreign object) are covered by the statute if committed *after* appellant was 14 years old. The complaint fails to allege when, during the nine-year period, any of the acts occurred or whether appellant was under fourteen years of age when they occurred. If such alleged acts as "fondling her breasts and pinching her buttocks" occurred after appellant was 14 years old, they are not covered by section 340.1, subdivision (a).

law. [Citation.] Rather, we generally now subscribe to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (14 Cal.3d at p. 513.)

But pragmatic concerns also require limits on delayed discovery. Without such limits the purpose of limitations statutes—" ' ' "to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared" ' " (*Prudential-LMI Ins.* v. *Superior Court* (1990) 51 Cal.3d 674, 684 [274 Cal.Rptr. 387, 798 P.2d 1230])—would be thwarted. Thus, "although a right to recover nominal damages will not trigger the running of the period of limitation, *the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period* . . . . [N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations." (*Davies* v. *Krasna, supra,* 14 Cal.3d 502, 514.) (Italics added.)

 In addressing appellant's claim of delayed discovery it is useful to note what she does *not* claim. Appellant professes no contemporaneous or belated ignorance of respondent's conduct. There is no allegation that when respondent allegedly fondled her breasts she was unaware he was fondling her breasts. Similarly, there is no allegation that when respondent allegedly committed each of the other acts of sexual molestation appellant was unaware he was doing so. Nor does appellant claim that at any time *after* an act of sexual molestation occurred she forgot or suppressed or otherwise was unaware of that act. (Cf. *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d 176, 190.)

Further, appellant does not profess contemporaneous or belated ignorance of the *wrongfulness* of respondent's conduct. In fact, in her brief appellant concedes that "certain aspects of the cause of action were obvious . . . the tortious act (the repeated sexual molestations)."

What appellant does claim is that her discovery of "ongoing deep-seated psychological injuries and the causal link between those injuries and [respondent's] misconduct" was delayed.

 The claim has been made before. "[A] number of plaintiffs . . . have alleged that psychological defense mechanisms caused by sexual

abuse, especially in the context of incest,[4] prevent recognition of the cause and extent of emotional harm." (*DeRose* v. *Carswell, supra,* 196 Cal.App.3d 1011, 1016).

One of those plaintiffs was Dianne DeRose. She alleged that her step-grandfather began sexually molesting her when she was four years old and didn't stop until she was eleven. Although she became 18 on March 2, 1980, she did not file her sexual abuse complaint until January 13, 1986, 4 years and 10 months after the 1-year limitation statute[5] (§ 340, subd. (3)) had expired.

DeRose, like appellant, argued "she [was] entitled to invoke the delayed discovery doctrine because she did not appreciate until recently the causal relationship between the alleged assaults and her emotional injuries, even though she was aware of the assaults." (*DeRose* v. *Carswell, supra,* 196 Cal.App.3d 1011, 1016).

In an opinion we find persuasive, with facts indistinguishable from the instant case, DeRose's claim was rejected. (*DeRose* v. *Carswell, supra,* 196 Cal.App.3d at pp. 1016-1021.)

DeRose, as does appellant, "present[ed] information from psychological and sociological literature about incestuous sexual abuse." (196 Cal.App.3d at p. 1016.) DeRose explained, as does appellant, that the pressures of such sexual abuse "sometimes prevent survivors of incest from understanding their emotional injuries until they receive appropriate therapy." (*Id.* at p. 1017.)

We have no reason to doubt the validity of this considerable and poignant literature. The fact of sexual molestation of children, its prevalence, and the deep-seated scars left on its victims can no longer be seriously questioned. Nevertheless, we conclude that appellant's complaint failed to "satisfy the minimum conditions for application of the delayed discovery rule." (196 Cal.App.3d at p. 1017.)

"[T]he delayed discovery doctrine applies *only* when a plaintiff has not discovered all of the facts essential to the cause of action. Conversely, if the plaintiff has discovered all the essential facts, the doctrine does not apply." (196 Cal.App.3d at p. 1017.) Appellant had long since discovered, in fact she always knew, that respondent had sexually molested her, that his acts "were all committed against [her] will and without her consent," that he

---

[4]Appellant repeatedly refers to respondent's conduct as "incest." Although the effect of respondent's alleged conduct on appellant may be comparable to or even indistinguishable from incest, the term is inaccurate. Respondent is not related "by blood" to appellant nor did he allegedly have intercourse with her. (Pen. Code, § 285.)

[5]Section 340.1 became effective January 1, 1987.

had "committed wrongful acts upon [her]," and that the conduct involved "violent struggle and insistent demands for sexual contact."

These were no nominal damages appellant suffered. Rather they were "appreciable and actual harm" and as such "commence[d] the statutory period." (*Davies* v. *Krasna, supra,* 14 Cal.3d 502, 512.) That appellant was unaware of *additional* harm ("feelings of great shame, embarrassment, humiliation, fear, confusion about herself, guilt, self-blame, self-hate, anxiety, extreme depression, psychosomatic and sleep-related complaints, inability to differentiate between sex and affection, and difficulty forming meaningful trust relationships") only created "uncertainty as to the amount of damages [and did not] toll [ ] the period of limitations." (*Id.* at p. 514; see also *Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1110-1111 [245 Cal.Rptr. 658, 751 P.2d 923]; *Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609, 1620 [265 Cal.Rptr. 605] ["The extent of damage is not an element of a cause of action in tort, and the general rule is that the cause of action is complete on the sustaining of 'actual and appreciable harm,' on which the recoverable damages would be more than nominal. (*Davies* v. *Krasna, supra,* 14 Cal.3d at p. 514.) We agree with the court in *DeRose* v. *Carswell, supra,* 196 Cal.App.3d at pages 1022-1023, that a young child sexually molested against his or her will suffers an actual and appreciable injury at the time, and would be entitled to more than nominal damages. Unless awareness of the acts is immediately suppressed the plaintiff would necessarily be aware of the injury, and the hidden nature of the full damage would not bring the delayed accrual rule into play."]).

Appellant would distinguish *DeRose* on the ground that it involved assault and battery. We disagree. The *DeRose* complaint, like appellant's, also alleged negligent infliction of emotional distress. Both factually alleged child sexual molestation.

Appellant also argues *DeRose* "ignored" section 340.1, subdivision (d). It did not. (*DeRose* v. *Carswell, supra,* 196 Cal.App.3d at p. 1020.)

Appellant further argues that because section 340.1, subdivision (d) applies to this case, therefore delayed discovery also must apply. She is incorrect. Subdivision (d) merely permits a delayed discovery exception *when* it applies. It does not affect or alter the substance of the delayed discovery rule, which, as we have explained, here is inapplicable.

4. *Equitable estoppel*

■ Amici curiae argue respondent's conduct estops him from asserting the statute of limitations. Assuming that his conduct, while it lasted, would

constitute such a bar, the argument is unavailing. As *DeRose* noted, "[t]he fundamental problem with [appellant's] estoppel argument is that she did nothing to pursue her claims even after [respondent's] conduct ceased." (196 Cal.App.3d at p. 1026.) Respondent's conduct ceased when appellant was 17 years old and left the household.

### 5. *Senate Bill No. 108*

In September 1990, the Legislature passed, and the Governor signed, Senate Bill No. 108 (Stats. 1990, ch. 1578) amending section 340.1. This legislation prescribes either an eight-year limitation period (from the age of majority) or a three-year from discovery period, whichever occurs later, for "childhood sexual abuse" civil actions. The legislation applies "to any action commenced on or after January 1, 1991." (§ 340.1, subd. (k).)

The amendment does not apply to the instant matter. Even if it did, its eight-year limitation period would have expired in 1981, six years before appellant filed her complaint. Its three years from discovery period may also have expired before appellant filed her complaint.

### 6. *Without leave to amend*

Before sustaining the demurrer *without* leave to amend, the trial court offered trial counsel for appellant an opportunity to amend the complaint. The offer was declined, trial counsel stating: "Your Honor, the plaintiff can't do better in her Complaint than she has already. The facts, as pled, are the facts as they occurred."

Under these circumstances sustaining the demurrer *without* leave to amend was proper.

### DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent.

At the outset, I want to highlight that the rationale of the majority opinion and the previous Sixth District opinion on which my colleagues principally

rely has limited application at best.[1] It cannot affect cases like appellant's if they are filed on or after January 1, 1991. That is because, as explained later in this opinion, the California Legislature has amended Code of Civil Procedure section 340.1[2] to expressly extend the limitations period until a child sex abuse victim discovers the cause of the *psychological* injuries she or he is suffering *as an adult*.[3] Thus, the fact a child may have been aware she or he was wronged in some way at the time of the abuse or realized it thereafter does not start the statutory period as to psychological problems which surface later in life.[4]

Consequently, this appeal is really about a limited, yet important class of child abuse victims—those who discovered the cause of their adult psychological injuries more than three years before January 1, 1991, and were over

---

[1]The previous Sixth District case, *DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011 [242 Cal.Rptr. 368], no longer provides even the slenderest of reeds to support the majority opinion. In an opinion filed one week after our division filed the present decision, the Sixth District limited its *DeRose* decision to cases where the plaintiff alleges assault and battery, not child sexual molestation. (*Daly* v. *Derrick*\* (Cal.App.).)

"[S]exual molestation comprises not only the (sexual touching) that is the gravamen of a battery cause of action, . . . but also the offender's abuse of his status as an adult in a position of authority and trust. The offender's abuse of the relationship of trust, . . . in turn creates psychological blocking mechanisms that prevent plaintiffs from becoming aware of the psychological injuries that were occurring at the time of the abuse and could in the future continue to develop. . . . The tort of sexual molestation, as alleged in this case, is not simply assault and battery under another label. [Citations omitted.] . . . We conclude that plaintiffs have pleaded a tort not subsumed within the traditional categories of assault and battery. *DeRose* does not, therefore, immediately dispose of this action." The Sixth District then went on to hold delayed discovery applies to the tort of "sexual molestation"—which is the tort alleged in the instant case—even though it does not to the tort alleged in *DeRose*—assault and battery. As a consequence, it reversed a summary judgment which had been entered in favor of the defendants in *Daly*.

[2]Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

[3]As amended, section 340.1 reads in pertinent part:

"(a) In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever occurs later.

" . . . . . . . . . . . . . . . .

"(k) The amendments to this section enacted at the 1990 portion of the 1989-90 Regular Session shall apply to any action commenced on or after January 1, 1991.

"(l) Nothing in the amendments specified in subdivision (k) shall be construed to preclude the courts from applying equitable exceptions to the running of the applicable statute of limitations, including exceptions relating to delayed discovery of injuries, with respect to actions commenced prior to January 1, 1991."

[4]The Sixth District likewise has acknowledged the 1990 amendments to section 340.1 have the effect of "essentially rejecting the holding in *DeRose*" and delaying the commencement of the statutory period for "psychological injury or illness occurring after the age of majority" until its cause is discovered. (*Daly* v. *Derrick, supra.*)

the age of twenty-six on that date, as well.[5] Is this group to be singled out and denied the right to compensation for their equally traumatic, equally expensive, and equally undiscovered injuries while those who happened to discover the cause of their injuries a few years or even a few months later are allowed a remedy. I find such a result is both unfortunate and unjustified under the normal principles of the discovery doctrine which applied to these cases before section 340.1 was amended.

I am concerned the majority opinion upholds a demurrer in a setting which cries out for a full factual hearing, including expert testimony. The discovery doctrine clearly requires the plaintiff to have discovered both her injury and the *wrongful* cause of that injury. (*Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421]; *G. D. Searle v. Superior Court* (1975) 49 Cal.App.3d 22 [122 Cal.Rptr. 218]; *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805 [195 Cal.Rptr. 421] (and cases cited therein).)

The majority relies heavily on quotations from *Davies v. Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807] and like cases, which suggest the statutory period commences running as soon as a plaintiff begins experiencing "appreciable and actual harm." However, those were cases in which the plaintiffs already knew the wrongful cause of their injuries. The only issue in dispute was whether they had as yet suffered enough harm to complete their causes of action so it could be said their claims had "accrued." *Davies* and *Prudential-LMI Ins. v. Superior Court* (1990) 51 Cal.3d 674 [274 Cal.Rptr. 387, 798 p.2d 1230] did not purport to dispense with the further requirement the plaintiff "discover" the rest of her cause of action, i.e., the *"wrongful* cause" of her injuries, before the limitations period commences.

In the case before this court, the allegations of the complaint do not exclude the possibility V. failed to discover the "wrongfulness" of some or all of the sexual acts she allegedly engaged in with Gardner until she reached her late 20's or early 30's. Under *Evans v. Eckelman* (1990) 216 Cal.App.3d 1609 [265 Cal.Rptr. 605], the limitations period does not commence running in cases arising out of child abuse until the victim recognizes the "wrongfulness" of the abusive acts as well as knowing the acts occurred. Thus, at a minimum appellant should be allowed the opportunity to amend her pleadings to allege when she first discovered the "wrongfulness" of the various forms of conduct alleged in the complaint.

---

[5] Section 340.1, subdivision (a), as amended, extends the statutory period for eight years beyond majority, that is, to age twenty-six, no matter when the plaintiff may have discovered her injuries or their cause. (See fn. 3, *ante*, at p. 275.)

In *Evans*, three brothers sued their uncle in 1987 for sexually abusing them twenty years earlier when they were young children. The trial court sustained a demurrer without leave to amend on grounds the statute of limitations had expired in the 1970's, shortly after the brothers reached majority. The Court of Appeal reversed and remanded to permit the plaintiffs to amend their pleadings to allege delayed discovery of the "wrongfulness" of the uncle's conduct toward them.

In reaching this conclusion, the *Evans* court first surveyed the scope and rationale of the delayed discovery rule as it has developed in other fields of the law. The court then applied these principles to child abuse cases.

"It has been widely recognized that the shock and confusion engendered by parental molestation, together with the parent's demands for secrecy, may lead a child to deny or block the traumatic events from conscious memory, or to turn the anger and pain inward so that the child blames himself or herself for the events. [Citations omitted.]. . . . Even where memory of the events themselves is not suppressed, it may be some time before the victim can face the full impact of the acts. [Citations omitted.]. . . . The parent-child relationship is a confidential one [citation omitted], placing special duties on the parent for the protection of the child's health and well-being, as well as special rights of custody and control. Stepparents, foster parents, and others in positions of parental authority enjoy similar rights over the child. [Citation omitted.]

"As a practical matter a young child has little choice but to repose his or her trust with a parent or parental figure. When such a person abuses that trust, he commits two wrongs, the first by sexually abusing the child, the second by using the child's dependency and innocence to prevent recognition or revelation of the abuse. . . . As in the professional negligence cases, application of the delayed discovery rule would serve to prevent the molester from using the child's ignorance and trust to conceal the primary tort. [Citation omitted.]" (216 Cal.App.3d at pp. 1615-1616.)

Having concluded the delayed discovery rule applies in child abuse cases, the *Evans* court proceeded to distinguish *DeRose* v. *Carswell* (1987) 196 Cal.App.3d 1011 [242 Cal.Rptr. 368], the decision upon which the majority opinion in this case relies so heavily. "The *DeRose* court did not discuss the contention made here, that plaintiffs were unaware of the wrongfulness of defendant's acts. *Awareness of wrongdoing is a prerequisite to accrual of the action under the delayed discovery rule. . . .*"[6]

---

[6]The Sixth District which decided *DeRose* v. *Carswell*, likewise has had second thoughts. In an opinion filed one week after we filed the instant decision, the Sixth District concluded that

"Plaintiffs here alleged that among the 'blocking mechanisms' caused by the abuse were 'internalized shame, guilt and self blame.' Construed liberally these allegations might show plaintiffs' unawareness *at the time of the abuse* [italics in original] that defendant was acting wrongfully." (216 Cal.App.3d at pp. 1618-1619, first italics added.)

The court pointed out the allegations of the complaint were not sufficient to determine how long the appellants remained unaware of the wrongfulness of their uncle's conduct and thus the cause had to be remanded for possible amendment. "We cannot, . . . state as a matter of law that it is psychologically impossible for plaintiffs to have lived in . . . continuing ignorance that what happened to them was wrong. . . . Given the unsettled state of the law in this area, plaintiffs should be allowed an opportunity to plead and prove their claim of delayed discovery of wrongfulness." (216 Cal.App.3d at p. 1619.)

The instant complaint likewise alleges V. suffered psychological blockage. As was true in *Evans*, her complaint does not specifically address the issue whether and for how long she repressed the *wrongfulness* of what was happening to her. Nevertheless, V.'s complaint does allege repression and denial of a nature that could have made her unaware of the wrongfulness of much if not all of that conduct. Among other allegations, it claims: "As a result of this experience . . . [V.] was caused to repress, deny, and psychologically disassociate from her experience of molest and from the feelings which it caused in her as a result of said disassociation, which was her psychological accommodation to the situation of being sexually molested by her father.

"As a result of said disassociation and her psychological accommodation . . . plaintiff grew up without perceiving, knowing or understanding the existence and nature of the psychological and emotional injuries which defendant's conduct caused. . . ."

If this repression, denial and dissociation rendered V. incapable of understanding the emotional injuries Gardner's alleged conduct caused, it is not impossible she also "repressed, denied, and disassociated herself" from the wrongfulness of that conduct. It is at least as probable V. remained unaware of the wrongfulness of her stepfather's actions well into adulthood as it is the three brothers remained unaware of the wrongfulness of their uncle's con-

---

in "sexual molestation" cases discovery is delayed until victims comprehend the "wrongfulness" of the molester's conduct toward them. (*Daly* v. *Derrick, supra*\*: "Each plaintiff claims she recongnized the *wrongfulness* of [the molesting teacher's] conduct only after reaching majority, at a time within the statutory period for filing her action. . . . [W]e conclude that they have presented facts sufficient to raise a triable issue of delayed discovery.")

duct for a similar period in *Evans*. Accordingly, she, like the Evans brothers, "should be allowed an opportunity to plead and prove [a] claim of delayed discovery of wrongfulness."

The majority opinion stresses V.'s complaint alleges inter alia some acts of "violent struggle" and "violent threats." Accordingly, since the abuse was taking place against her will, she must have known she had been wrongfully abused and had a cause of action when she reached majority.

A similar argument was made and rejected in *Evans*. "Defendants argue that plaintiffs, by alleging the abuse was accomplished against their will, without their consent, and by means of threats, have conceded they were aware the acts were wrongful. But parents, and others acting in their place, often demand that children do acts against their will and without their consent. Society does not regard such assertions of parental authority as wrong, even when accomplished by threat of discipline. . . . Children often have grievances against their parents. To demand that a young child assume the wrongfulness of any parental order, and hold himself in readiness to sue upon majority, would be unreasonable." (216 Cal.App.3d at p. 1619.)

In the instant case, there is a further reason to reject the notion V. must have known of the wrongfulness of her stepfather's acts because they were accomplished against her will. For, in this case, it is alleged many of those acts were consensual. Thus, even if one were to assume V. was aware of the wrongfulness of some of the acts of sexual abuse—perhaps those accompanied by the alleged "violent struggle"—that does not mean she was aware of the wrongfulness of other acts in which she engaged because of Gardner's "positions of parental authority and [V.'s] relationship of dependency and trust upon him" or because of his "bribery for sexual favors." Those consensual acts may well have been far more damaging psychologically in the long run than any where V. merely yielded to force. Yet because she had cooperated voluntarily V. may have repressed any feelings they represented wrongful conduct.

I shall assume for the moment V. appreciated the wrongfulness of some of the acts of sexual abuse but did not appreciate—or repressed—the wrongfulness of others. At the worst, that should mean the statute of limitations has run solely as to the former. If a substantial amount of her adult physical and psychological problems could be traced to consensual sexual activity whose wrongfulness she repressed, denied, or disassociated from, V. would retain a viable cause of action at least as to those acts and their unfortunate consequences. Moreover, as *Evans* points out, we cannot assume at the pleading

stage that a child abuse victim will understand the wrongfulness even of those sexual acts a parent compels her to perform.[7]

Accordingly, under *Evans* I would remand this cause to afford V. the opportunity to amend in the event she is in a position to allege she repressed the wrongfulness of all or a substantial amount of the abusive conduct which caused her alleged injuries.

The principles enunciated in *Evans* so clearly dictate reversal of the demurrer in this case I am reluctant to weaken the message by discussing at length any alternative grounds for dissenting. Yet there are at least two others which are worthy of mention.

First, the complaint alleges harm that did not surface until well into adulthood. This harm was different in kind and degree from any harm which V. may have experienced at the time the abusive acts were committed. Like the asbestosis and similar cases where the harm matures slowly and silently, the cause of action for this "adult" psychological harm did not accrue until V. discovered *that* harm and *its* "wrongful cause." (See, e.g., *Associated Indemnity Corp.* v. *Industrial Accident Commission* (1932) 124 Cal.App. 378 [12 P.2d 1075] [cause of action based on silicosis did not accrue when shortened breath occurred but when harm matured sufficiently the plaintiff's function was substantially impaired]; *Marsh* v. *Industrial Accident Commission* (1933) 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563]; *G. D. Searle* v. *Superior Court, supra,* 49 Cal.App.3d 22.) Indeed, this harm results from the invasion of a different "primary right"—a betrayal of trust generating long term psychological damage—from the primary right to be free of bodily intrusion which was the gravamen of any cause of action existing at the time of the abusive acts. (*Zambrano* v. *Dorough* (1986) 179 Cal.App.3d 169 [224 Cal.Rptr. 323] [woman allowed to sue for loss of childbearing ability not discovered until years after physician's malpractice even though she was aware of wrongful act and suffered some injuries at time of malpractice].) "Zambrano's right to be free of the transitory damages of discomfort and distress is separate from and independent of her right to have children." (*Id.,* at p. 174.).

---

[7]In an appeal of a summary judgment in a similar case of child sexual abuse, the Sixth District very recently concluded the plaintiffs had raised triable issues as to whether they had failed to "discover" the "wrongfulness" of the molester's conduct until undergoing therapy as adults nearly a decade later. (*Daly* v. *Derrick, supra*▮) The court deemed the issues "triable" even though the plaintiffs had complained to school authorities about the molestations before graduating. It found the issue "triable" as to one plaintiff who also had written contemporaneous entries in her diary describing her relationship with the molesting teacher as "unclean" and "unnatural" and another plaintiff who told her mother the molester had been "untrusive" toward her.

Assume V. experienced "appreciable and actual" injury of some sort at the time of the molestation. Of course, at the demurrer stage we lack *evidence* whether and how much physical or emotional injury she may have suffered at that time. Nevertheless, let us assume she experienced some physical discomfort and emotional distress even as to consensual sexual acts in which she engaged with her stepfather. Further assume she was aware of the *wrongfulness* of the acts which caused those injuries. This does not mean her failure to file suit then or shortly after reaching majority should foreclose her from recovering for the far different and more serious harm she is suffering later in life. (*Martinez-Ferrer v. Richardson-Merrill, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591].)

The Ninth Circuit confronted a similar issue in *Simmons* v. *United States* (9th Cir. 1986) 805 F.2d 1363, 1366. There, a government counselor had engaged in sexual relations with a patient. The patient sued four years later despite a two-year statute of limitation, asserting delayed discovery. The defense claimed the patient's suit was barred by the statute of limitations because her injury started with "the emotional pain she suffered immediately after first having sexual intercourse. . . . or at the latest, . . . when gossip about her and [the married defendant] began to cause her embarrassment and humiliation."

The Ninth Circuit held the plaintiff's injury was not that immediate emotional pain or the later "embarrassment and humiliation." Instead, it upheld the trial court's finding "that [the plaintiff's] injuries were the anxiety and despair which led to her hospitalization and attempted suicide and the deep depression she experienced due to what her doctor diagnosed as post-traumatic stress syndrome. She did not know until . . . her psychiatrist first diagnosed her problem, that her counselor's improper handling of the transference phenomenon [having sex with the patient] had caused the emotional and psychological damage she suffered. . . . This is not a case in which we can say, despite the factual findings, that [the plaintiff] should have known the cause of her injuries at an earlier date. We agree with the reasoning in a similar case of psychiatric malpractice, that 'where the injury and cause thereof are subtler and more complicated than in the normal malpractice case, it seems particularly inappropriate to determine as a matter of law what the plaintiff should have known.' [Citation omitted.]" (805 F.2d at pp. 1367-1368.)

The "appreciable and actual" injuries the majority find sufficient to acti-vate the statute of limitations in the instant case are the substantial equiva-lent of the immediate emotional pain and subsequent "embarrassment and humiliation" the *Simmons* plaintiff experienced. These are the very sorts of

harm the Ninth Circuit found insufficient to start the limitations period as to a plaintiff's deep-seated psychological injuries.

I find it relevant to note what motivated the Legislature when it enacted the original version of section 340.1. That body clearly understood it was authorizing the application of delayed discovery principles to the deep-seated psychological harm which ordinarily does not surface until well into adulthood—rather than the "transitory damages of discomfort and distress" the child may experience at the time of the abuse.

In explaining the rationale behind the proposed section 340.1 for other members of the Legislature, the Senate Judiciary Committee wrote: "The roots of the above problems can remain undiscovered for years, during which time the statute of limitations for bringing these cases to trial expires. In other *undiscovered-injury situations such as asbestos workers* the statutes of limitations have been extended to take into consideration the hidden nature of the injury." (Assem. Bill No. 1445 Fact Sheet, Sen. Com. on Jud. (1985-1986 Reg. Ses.), italics added.) Thus, the Legislature viewed the adult psychological injuries resulting from childhood sexual abuse as identical to the disease of asbestosis resulting from exposure to asbestos. The lawmakers knew the courts had applied delayed discovery principles to allow lawsuits to be filed after the disease matured into a serious problem and the victim discovered asbestos exposure was the cause of that problem. Those were the principles they expected the courts to apply to child sexual abuse victims to allow them to file lawsuits when the psychological consequences of their abuse ultimately emerged in adulthood. To that end, the original version of section 340.1 specifically authorizes courts to apply "delayed discovery exceptions to the accrual of a cause of action for sexual molestations of a minor."

The Legislature has made this intent even more explicit in the 1990 amendment to section 340.1. As revised, the code section expressly allows a lawsuit to be filed "within three years of the date the plaintiff discovers or reasonably should have discovered that psychological *injury or illness occurring after the age of majority* was caused by the sexual abuse. . . ." (Code Civ. Proc., § 340.1, subd. (a), as amended Sept. 29, 1990.) Thus, the Legislature has made explicit what it intended all along. It means for delayed discovery to apply to the causes of action which are based on the psychological injuries and illnesses which occur in adulthood.

The majority opinion runs counter to the Legislature's evident intent. It forecloses delayed discovery as to those injuries which mature in adulthood. It does so on a theory the "transitory damages of discomfort and distress" the victim may experience when the abuse occurs represent "appreciable and

actual" harm sufficient to activate the statute of limitations. The majority assumes child abuse victims realize the "wrongful cause" of this discomfort and distress at the time of the abuse, or shortly thereafter. Their cause of action accrues then and thus the limitations period starts running as soon as they reach majority.

This rationale clearly does not survive the 1990 amendments to section 340.1. More significantly for this case, because of reasons recited above, it also is inconsistent with the legislative intent behind earlier versions of section 340.1 and inconsistent with the judicial doctrine of delayed discovery as it has evolved in California with respect to injuries which are hidden or slow to mature.

The majority opinion makes much of the policy supporting early termination of the right to sue. Otherwise, potential defendants will not enjoy repose and courts will be asked to decide cases dependent on stale evidence.

There is much to be said on the other side of this policy debate. As to the first consideration, should sex abusers ever enjoy repose from paying compensation to their victims? As to the second, on balance, is it worth it to deny child abuse victims any chance for recovery just so the evidence won't be even *slightly* more stale than it will be in cases already permitted? After all, a victim molested at age four or five could sue sixteen or seventeen years later—at majority plus three years—no matter when she "discovered" her cause of action even under the version of section 340.1 which existed when V. filed her suit. Memories don't fade evenly. Most of the loss occurs in the first few years. So it makes little sense to deny V. her right to sue when the abusive acts occurred 15 to 23 years before on grounds the evidence is somehow too "stale" in her case while suits are allowed in other like cases where the time span between event and trial is nearly as long or conceivably longer.

In any event, there is little reason for my colleagues and me to argue over the policy choice between defendant's repose and the desirability of fresh evidence, on one hand, and a child sex abuse victim's right to sue for compensation, on the other.[8] That policy choice has been made for us by the

---

[8]The Sixth District has expressed its views on how these values should be balanced in the following terms:

"The policies favoring on one hand unenforceability of stale claims, as reflected in statutes of limitation, and on the other hand allowance of a remedy to survivors of childhood sexual abuse, as reflected in the principle of delayed discovery, stand in inescapable tension. We are well aware of the problems of proof facing parties in litigation over events that happened more than a decade ago. We are also conscious of the potentially devastating impact of accusations of sexual molestation . . . . Neither these undeniable concerns *nor any other*

Legislature. The state's lawmakers have expressed their resolution of these competing policy considerations through section 340.1. The legislative intent behind the original version of that law demonstrates the Legislature struck the balance in favor of allowing recovery for late-discovered causes of action in child sex abuse cases just as has been done in asbestosis and similar cases. The values of repose and fresh evidence had not proved enough to justify denying recovery in asbestosis cases. The Legislature did not find these values sufficiently weighty to deny recovery in child sex abuse cases either.

The Legislature's policy choice is even clearer in the 1990 amendments to section 340.1. Now, a plaintiff molested at the age of four or five has twenty-one or twenty-two years to file suit, without bothering with the delayed discovery rule. That does not suggest the Legislature places much value on repose or fresh evidence in these cases. Our state lawmakers then go on to expressly authorize the filing of lawsuits beyond that period where a plaintiff suffers psychological injury or illness in her adult years and does not discover its cause until later. (Code Civ. Proc., § 340.1, subd. (a), see fn. 3, *supra*.) What more could the California Legislature do to tell us where we should strike the balance between a child sex abuse victim's right to recover and the competing values of defendant repose and fresh evidence?

As yet a third ground for dissenting, I am more persuaded by out-of-state authority[9] and the overwhelming majority of commentators[10] than by the Sixth District's opinion in *DeRose* v. *Carswell, supra,* 196 Cal.App.3d 1011 on the question of psychological repression and its effect on statutes of limitation. Even the Sixth District has conceded in a subsquent opinion that the limitation period does not begin while a child abuse victim is repressing any memory the abusive acts actually occured. (*Mary D.* v. *John D.* ∎

policy favoring prompt assertion of claims, *however,* justifies excepting the category of childhood sexual abuse claims from the rule that a statute of limitation begins to run only when a plaintiff knows or should know of all facts essential to the cause of action [citation omitted], including the fact that he or she has been wronged [citation omitted]." (*Daly* v. *Derrick, supra,* ∎ italics added.)

[9]See, e.g., *Riley* v. *Presnell* (1991) 409 Mass. 239 [565 N.E.2d 780]; *Hammer* v. *Hammer* (1987) 142 Wis.2d 257 [418 N.W. 23]; *Simmons* v. *United States, supra,* 805 F.2d 1363; *Osland* v. *Osland* (N.D. 1989) 442 N.W.2d 907; *Callahan* v. *State* (Iowa 1990) 464 N.W.2d 268.

[10]See, e.g., Comment, *Adult Incest Survivors and the Statute of Limitations: The Delayed Discovery Rule and Long-Term Damages* (1985) 25 Santa Clara L.Rev. 191; Butler, Conspiracy of Silence: The Trauma of Incest (1978).

(Cal.App.).)[11] The statutory period likewise should not start while the victim is repressing the casual connection between childhood abuse and any injuries she may suffer then or later. (*Hammer* v. *Hammer, supra,* 418 N.W.2d 23, 26 [on facts nearly identical to the instant case, the court held, "[E]ven if Laura may have harbored some subjective doubts about the normalcy of [her father's] actions, because of [her father's] dominion and authority and her own guilt, depression and disassociation, she had no information to a reasonable probability of the nature of her injuries or the facts with respect to their cause.".])

The Supreme Judicial Court of Massachusetts recently considered the very issue the majority here dismisses out of hand: May a psychological injury prevent a plaintiff from "discovering" the cause of that very injury and thus delay the start of the limitations period? The Massachusetts high court answered this question in the affirmative and reversed a summary judgment which had been granted in favor of the defendant on statute of limitations grounds. (*Riley* v. *Presnell, supra,* 565 N.E.2d 780.)

In *Riley,* plaintiff had consulted the defendant, a psychiatrist, over a decade before the lawsuit was filed. During treatment, the defendant had sexual relations with his patient, as well as prescribing Valium and marijuana smoking. Years later, the plaintiff had become a Valium, alcohol, and marijuana abuser and was suffering serious psychological problems. He went to another psychiatrist. It was over a year into this treatment before he and the psychiatrist recognized his addictions and psychological problems were caused by the defendant psychiatrist's actions during the earlier therapy, including his sexual relations with the plaintiff.

The discovery of the causal link between psychological problems and the first psychiatrist's earlier sexual abuse and other counterproductive conduct came several years after the nominal statutory period had expired. Only if "discovery" of the plaintiff's cause of action was considered to have been delayed until he recognized the causal link would he escape the bar of the statute of limitations.

Reasoning along lines similar to the majority opinion in this case—but at least after hearing some evidence on the issue—the trial court granted summary judgment.

The Supreme Judicial Court reversed in what seems to me a very sensible opinion which applies with even greater power to the instant case.

---

[11]As noted earlier, a week after the filing of our opinions in this case, the Sixth District essentially emasculated the *DeRose* holding by stressing it applied only to assault and battery causes of action and not to claims of childhood "sexual molestation," such as are involved in the instant case. (*Daly* v. *Derrick, supra.*)

The court held the question was whether the tortious conduct itself could cause psychological problems which would prevent a reasonable person from recognizing the causal link between that conduct and the psychological problems he or she was suffering. The opinion then clarified what it meant by a "reasonable person" in this context. The reasonable person is one who was subjected to the conduct. "If the defendant's conduct would, in an ordinary reasonable person, cause *an injury which by its very nature prevents the discovery of its cause*, the action cannot be said to have accrued. . . . An injury to the mind could interfere with the discovery of the cause of action." (*Riley* v. *Presnell, supra*, 565 N.E.2d 780, 786, italics added.) The Massachusetts high court then ruled this was a jury question not something to be decided on summary judgment to say nothing of some sort of decision on the pleadings, as was done in the instant case.

Can any one seriously question there is a possibility that sexual abuse during childhood can result in "injury to the mind" capable of "interfer[ing] with the discovery of the cause" of the victim's ongoing psychological problems. The literature the majority dismisses as irrelevant is replete with evidence of this very connection.[12] I am certainly not ready to say as a matter of law that child sexual abuse is incapable of producing such a psychological block in the "ordinary reasonable person" who has suffered through this experience. Perhaps I could be persuaded after a full-scale hearing that this particular plaintiff "discovered" the causal link between her childhood of sexual abuse and her adult psychological problems long before she filed this action. If so, the statute of limitations would have run and she would be out of court.

But under the majority opinion we will never have the benefit of that hearing in this or any like case involving the class of child sex abuse victims not covered by the express provisions of the 1990 amendments to section 340.1. In my opinion, it is neither wise nor fair to slam the courthouse door in the face of child sex abuse victims who have been so traumatized by this experience that it takes years for them to comprehend they have been injured, or to awaken to the wrongfulness of a parental figure's behavior

---

[12]See, e.g., Gelinas, *The Persisting Negative Effects of Incest* (1983) 46 Psychiatry, pages 312-332; Black-White & Kline, *Treating the Dissociative Process in Adult Victims of Childhood Incest* (1985) Social Casework: The Journal of Contemporary Social Work, pages 394-402; Linberg & Distad, *Post-Traumatic Stress Disorders in Women Who Experienced Childhood Incest* (1985) 9 Child Abuse & Neglect, pages 329-334; Herman, Russell & Trocki, *Long-Term Effects of Incestuous Abuse in Childhood* (1986) 143 American Journal of Psychiatry, page 1293.

with them, or to uncover the true cause of their ongoing psychological misery.

Accordingly, I would reverse the demurrer and allow the case to proceed.