[No. B114274. Second Dist., Div. One. Oct. 2, 1998.]

MARK K., Plaintiff and Appellant, v.
ROMAN CATHOLIC ARCHBISHOP OF LOS ANGELES, Defendant and
Respondent.

[And eight other cases.*]

*John K. v. Roman Catholic Archbishop (No. BC153772); Michael M. v. Roman Catholic Archbishop (No. KC023297); Christopher D. v. Roman Catholic Archbishop (No. NC019503); Scott G. v. Roman Catholic Archbishop (No. NC019504); James D. v. Roman Catholic Archbishop (No. BC161801 [originally Super. Ct. Orange County No. 76 64 67]); Larry L. v. Roman Catholic Archbishop (No. BC162935); Michael F. v. Roman Catholic Archbishop (No. BC162937); and James F. v. Roman Catholic Archbishop (No. BC162938).

## COUNSEL

Blum & Roseman, Mark E. Roseman, Ross & Rubino and Stephen C. Rubino for Plaintiff and Appellant.

McNicholas & McNicholas, John P. McNicholas and David M. Ring for Defendant and Respondent.

## OPINION

**MASTERSON, J.**—We affirm judgments entered in nine consolidated actions following an order sustaining the demurrers of the Roman Catholic Archbishop of Los Angeles, a corporation sole (hereafter the church), without leave to amend.

### STANDARD OF REVIEW

In reviewing the sustaining of a demurrer, "we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

### BACKGROUND

The nine consolidated cases were filed on July 15 and December 26, 1996. In each, an adult plaintiff alleged that when he was a minor, he was molested by Father Theodore Llanos. Damages were also sought against the church. The amended complaints at issue on appeal are nearly identical, the main differences being the plaintiff's age, the dates and locations of the molestations, and the dates on which the plaintiff ascertained certain facts pertinent to the statute of limitations. The parties have not addressed these differences, and the church has used the dates alleged by the lead plaintiff as

representative of all. We shall take a similar approach, using the facts alleged by the lead plaintiff and referring to plaintiff in the singular to designate all nine of the plaintiff/appellants involved in this case.

The amended complaint alleged a cause of action against Father Llanos for "sexual assault and battery," and two causes of action against the church—for "Negligent Supervision/Retention" and for "Fraud: Conspiracy to Suppress Facts." In the assault cause of action, plaintiff alleged he was born in 1965. Father Llanos was ordained as a Roman Catholic priest in 1974. In 1975 and 1976, Llanos was assigned as a parish priest at St. Bernard Catholic Church in Los Angeles. During that time, Father Llanos sexually molested plaintiff. "The onset of the period of plaintiff's discovery, as an adult, that his psychological injury or illness, occurring after his age of majority was caused by the sexual abuse of Fr. Llanos, began in or about November 1995, when plaintiff initially realized the connection between the herein alleged childhood sexual abuse and his adulthood psychological injury or illness." Based on this discovery, plaintiff alleged that the cause of action against Father Llanos was timely filed pursuant to Code of Civil Procedure section 340.1, subdivision (a).[1]

In the negligent supervision/retention cause of action, plaintiff alleged that in 1975 and 1976 a "special fiduciary relationship" existed between himself and the church, which duty was breached by Father Llanos. Llanos's position with the church implied that he "was safe, and morally and spiritually beneficial to all children." No later than 1973, the father of one of the plaintiffs informed church officials that "Llanos had acted, or attempted to act sexually inappropriately with a minor male." The late Cardinal Timothy Manning was present when this information was conveyed. The boy's father received the response that the information "was significant, and that '. . . we'll take care of it . . . we'll handle this . . . .' " In April or May 1974, a teacher at St. Bernard's elementary school who is the mother of another plaintiff herein "reported sexually inappropriate conduct by Fr. Llanos with her minor son . . . ." A pastor to whom she made this report "assured [her] that he would contact . . . the pastor of St. Bernard's church (where Fr. Llanos was an associate pastor) with information about the expressed concerns she had about an inappropriate kiss, by Fr. Llanos, upon her son's mouth, that caused her son to react with conduct evidencing repulsion, and that he would specifically recommended that [the pastor] maintain a close supervision of Fr. Llanos, with regards to minor boys."

---

[1]Code of Civil Procedure section 340.1, subdivision (a), provides: "In any civil action for recovery of damages suffered as a result of childhood sexual abuse, the time for commencement of the action shall be within eight years of the date the plaintiff attains the age of majority or within three years of the date the plaintiff discovers or reasonably should have discovered that psychological injury or illness occurring after the age of majority was caused by the sexual abuse, whichever period expires later."

In a separate section of the negligent supervision/retention cause of action captioned "Delayed Discovery - Equitable Estoppel," plaintiff alleged that based on the church's having been put on notice as early as 1973 that Father Llanos was sexually exploiting children, it was foreseeable that he would continue to engage in such activity. Promises made after the reports of misconduct that matters would be "tak[en] care of" and that Father Llanos would be closely supervised were knowingly false, and were made with the intent to deceive and "conceal the intentions of the church in accordance with de facto church policy not to investigate any allegations that would bring scandal unto the church." In June 1996, a survivor of Father Llanos's childhood sexual abuse made public allegations against Llanos. "It was not until June 1996, that plaintiff became aware of any fact that the [church] was responsible for not protecting him from Fr. Llanos, and in June 1996, plaintiff, for the first time learned that in 1973, notice had been given to the [church], of the alleged inappropriate conduct of Fr. Llanos with another minor boy. [¶] . . . Prior to June 1996, plaintiff had no notice or information of circumstances to put him on inquiry notice of the [church's] identity, meaning its 'sameness and oneness' in conjunction with the [childhood sexual abuse] perpetrated by Fr. Llanos, as a result of the [church's] concealment of information known to the [church] regarding Fr. Llanos' sexual conduct with boys."

Plaintiff further alleged that he had no awareness that the church was a potential tortfeasor "because of Fr. Llanos's calculated and spiritually insidious conditioning and grooming, evidenced by Fr. Llanos telling plaintiff, at the time he sexually victimized plaintiff, [certain] frightening, paranoid inducing, confusing intimidating, and deliberate God-fearing admonishments . . . ." These included telling plaintiff, while kissing him, that " 'This is what special friends do' "; saying that the abuse was " 'okay with God' and 'that it was our secret' "; in the context of admonishing plaintiff not to tell the secret, asking, " 'Have you seen someone's eyes gouged out?' "; and stating that he " 'could get away with anything.' " These "admonishments constituted legal and religious duress. As a result of [the] admonishments . . . , plaintiff became, at the time of the [childhood sexual abuse], and thereafter, chronically depressed, fearful, guilt ridden, and shameful . . . ."

Finally, plaintiff alleged that the cause of action was governed by the one-year statute of limitations for wrongful act or neglect. (Code Civ. Proc., § 340, subd. (3).) "At no time up to June 1996, did plaintiff have actual or presumptive knowledge or suspicion of any facts sufficient to put him on inquiry notice that the [church] had concealed its 1973 notice of Fr. Llanos's conduct, and of the [church's] failure to do anything in response to the notice relevant to investigating, supervising or retaining Fr. Llanos." Thus, the

action was filed within one year of "learning of the [church's] intentional concealment of its identity as a tortfeasor," and such concealment estops the church from claiming the statute of limitations as a defense.

In the cause of action for fraud/conspiracy to suppress facts, plaintiff alleged that "[b]etween 1973 and 1985, the incorporated office of Cardinal Timothy Manning operated without directors or members, and there existed severability of title and ownership as between the Catholic Church and his individual officeholder as the corporation sole." Individuals and entities within the church "entered into a conspiracy and agreement to defraud, by their concealment and suppression of the facts known to them of notice of Fr. Llanos's reported deviant sexual conduct, and other inappropriate conduct with minors." In furtherance of the conspiracy to suppress facts, the individuals and entities "did not use their separate power and influence to question, confront, investigate or otherwise require Fr. Llanos to answer the 1973 and 1974 allegations of deviant sexual conduct." The last overt act of the conspiracy occurred on September 24, 1994, when the "Vicar for Clergy" of the Los Angeles Archdiocese wrote in a letter to the father of one of the plaintiffs that " '[n]o person has ever come forward to make allegations in Father Llanos' 22 years in the priesthood prior to those of your son coming forward on September 16[,] [1994].' "[2]

The trial court sustained demurrers to the two causes of action alleged against the church without leave to amend.[3] The basis of this ruling was that the conspiracy claim did not state a cause of action, and that both causes of action were barred by the statute of limitations.

## DISCUSSION

At the outset, plaintiff acknowledges that he is bound by two significant limitations with respect to an action against a religious institution based on allegations of childhood sexual abuse perpetrated by one of its clergy. First, because the abuse is committed outside the scope of the cleric's employment, the doctrine of respondeat superior is not available. (*Rita M.* v. *Roman Catholic Archbishop* (1986) 187 Cal.App.3d 1453, 1461 [232 Cal.Rptr. 685]; see *Mary M.* v. *City of Los Angeles* (1991) 54 Cal.3d 202, 218, fn. 11 [285 Cal.Rptr. 99, 814 P.2d 1341].) Second, the liberalized statute of limitations for victims of childhood sexual abuse (Code Civ. Proc.,

---

[2]Although not specifically alleged in the complaint, plaintiff asserted that this cause of action was governed by the three-year fraud statute of limitations of Code of Civil Procedure section 338, subdivision (d).

[3]Father Llanos's demurrer to the sexual assault cause of action was overruled. He apparently committed suicide sometime later.

§ 340.1, subd. (a) [see fn. 1, *ante*]) is also unavailable, because it applies only to causes of action against an individual perpetrator. (*Debbie Reynolds Prof. Rehearsal Studios* v. *Superior Court* (1994) 25 Cal.App.4th 222, 231 [30 Cal.Rptr.2d 514].)[4]

Given the above, resolution of this case turns on the question of whether plaintiff's allegations that he first became aware of certain facts in June 1996 are sufficient to establish that the one-year personal injury or three-year fraud statutes of limitations were tolled until that time, thereby rendering his complaint timely when filed on July 15 (or on December 26), 1996.[5] We answer that question in the negative.

■ "[T]he common law rule, that an action accrues on the date of injury [citation], applies only as modified by the 'discovery rule.' " (*Jolly* v. *Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 [245 Cal.Rptr. 658, 751 P.2d 923].)[6] "Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that [his] injury was caused by wrongdoing, that someone has done something wrong to [him]. . . . [T]he limitations period begins once the plaintiff ' " 'has notice or information of circumstances to put a reasonable person on inquiry . . . .' " ' [Citations.] A plaintiff need not be aware of the specific 'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, [he] must decide whether to file suit or sit on [his] rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; [he] cannot wait for the facts to find [him]." (*Id.* at pp. 1110-1111, italics and fn. omitted.)

"Two common themes run through the cases applying the discovery rule of accrual. First, the rule is applied to types of actions in which it will generally be difficult for plaintiffs to immediately detect or comprehend the breach or the resulting injuries. In some instances the cause or injuries are actually hidden, as in the case of a subterranean trespass [citation], the erasure of video tapes held in the sole custody of the defendant [citation], or foreign objects left in a patient's body after surgery [citation]. Even when

---

[4]A recent amendment to Code of Civil Procedure section 340.1 that has not yet taken effect will permit a victim of childhood sexual abuse to file an action against an entity responsible for the abuse within three years of discovering that psychological injury occurring after the age of majority was caused by childhood sexual abuse, but no later than the plaintiff's 26th birthday. (Assem. Bill No. 1651, as adopted by Stats. 1998 (Reg. Sess.), ch. 1032, § 1.)

[5]Other than the allegations noted above, plaintiff failed to provide any details of this "discovery." However, the record does not reflect that the church has taken exception to this lack of specificity in pleading.

[6]Regardless of the accrual date, the statute of limitations on almost all causes of action is tolled for a minor plaintiff until he reaches the age of majority.

the breach and damage are not physically hidden, they may be beyond what the plaintiff could reasonably be expected to comprehend. . . . [¶] Second, courts have relied on the nature of the relationship between defendant and plaintiff to explain application of the delayed accrual rule. The rule is generally applicable to confidential or fiduciary relationships. [Citations.]" (*Evans* v. *Eckelman* (1990) 216 Cal.App.3d 1609, 1614-1615 [265 Cal.Rptr. 605].)

■ "A close cousin of the discovery rule is the 'well accepted principle . . . of fraudulent concealment.' [Citation.] 'It has long been established that the defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such time as plaintiff, by the exercise of reasonable diligence, should have discovered it.' [Citation.] Like the discovery rule, the rule of fraudulent concealment is an equitable principle designed to effect substantial justice between the parties; its rationale 'is that the culpable defendant should be estopped from profiting by his own wrong to the extent that it hindered an "otherwise diligent" plaintiff in discovering his cause of action.' [Citations.]" (*Bernson* v. *Browning-Ferris Industries* (1994) 7 Cal.4th 926, 931 [30 Cal.Rptr.2d 440, 873 P.2d 613].)

In analyzing the application of the statute of limitations to the negligent supervision/retention cause of action, it is helpful to consider the nature of the cause of action itself. That the theory of employer negligence may be applied in a situation such as this is illustrated by *Roman Catholic Bishop* v. *Superior Court* (1996) 42 Cal.App.4th 1556 [50 Cal.Rptr.2d 399]. There, a victim of childhood sexual abuse sued the church for negligent supervision and retention, alleging that it should have known of the sexual propensities of a parish priest. Her action was properly dismissed, but on the ground that she could not prove that the church had any basis upon which to suspect that the priest had deviant tendencies. (*Id.* at pp. 1565-1567.)[7]

■ The elements of actionable negligence or wrongful conduct are a duty to use due care and a breach of that duty which proximately causes the plaintiff's injuries. (*Wright* v. *City of Los Angeles* (1990) 219 Cal.App.3d 318, 344-345 [268 Cal.Rptr. 309]; 6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, pp. 60-61.) ■ In contrast to *Roman Catholic Bishop* v. *Superior Court*, the church in this case had a more than adequate

---

[7]As set forth in Restatement Second of Agency section 213, comment d, pages 459 to 460 (as quoted in *Roman Catholic Bishop* v. *Superior Court, supra,* 42 Cal.App.4th at p. 1565), " 'Liability results . . . not because of the relation of the parties, but because the employer antecedently had reason to believe that an undue risk of harm would exist because of the employment. . . ." (Italics omitted.)

basis for being suspicious of Father Llanos. Accordingly, a duty was breached when the church negligently supervised and retained Father Llanos by permitting him to have access to plaintiff in situations where there was a potential for sexual abuse, or at least failing to warn plaintiff of Llanos's known propensity for engaging in sexual conduct with boys. Plaintiff has alleged that he became chronically depressed, among other things, "at the time" of the abuse by Father Llanos. Thus, injury occurred when, as a result of the church's breach of duty, plaintiff was molested.[8]

It is also important to note what plaintiff has not alleged. He has not alleged that he was at any time unaware of Father Llanos's identity or of his connection with the church. Nor has plaintiff alleged that he was unaware of the fact that he had been molested by Father Llanos or that he failed to appreciate the wrongfulness of Llanos's conduct until some subsequent event triggered his memory and/or made him realize that Llanos had acted inappropriately.[9]

Plaintiff's failure to allege lack of knowledge or appreciation of Father Llanos's misconduct deprives him of any basis upon which to disclaim inquiry notice that the church was a potential tortfeasor. Plaintiff knew that Llanos was a priest of the church, thereby obligating plaintiff to determine, as with any employer whose employee has injured a third party, whether the church shouldered some responsibility for the misconduct of its priest. (See *Jolly* v. *Eli Lilly & Co.*, *supra*, 44 Cal.3d at p. 1109.) As stated, under Code of Civil Procedure section 352, the statute of limitations was tolled until plaintiff reached the age of majority. Thus, the one-year statute of limitations on the cause of action against Father Llanos would have expired but for Code of Civil Procedure section 340.1, subdivision (a), and the one-year statute of limitations on the cause of action against the church did in fact expire, in 1984 when plaintiff turned nineteen. Indeed, not only did Father Llanos's sexual misconduct put plaintiff on inquiry notice regarding the potential liability of the church for acts of its negligence or intentional

---

[8]The timing of this injury may be contrasted with plaintiff's cause of action against Father Llanos, which alleged, as is permitted under Code of Civil Procedure section 340.1, subdivision (a), that injury occurred after plaintiff reached the age of majority.

[9]Appellate decisions in actions brought before Code of Civil Procedure section 340.1, subdivision (a), took effect permitted the statute of limitations to be tolled until such time as the victim was able to appreciate the wrongfulness of the abuser's conduct. (See *Sellery* v. *Cressey* (1996) 48 Cal.App.4th 538, 545 [55 Cal.Rptr.2d 706]; *Evans* v. *Eckelman, supra*, 216 Cal.App.3d at pp. 1618-1619.) Plaintiff's allegations that Father Llanos threatened him with physical harm and told him that he (Llanos) would not be caught are antithetical to the notion that plaintiff failed to contemporaneously appreciate the wrongfulness of Father Llanos's conduct. (See *Marsha V.* v. *Gardner* (1991) 231 Cal.App.3d 265, 271 [281 Cal.Rptr. 473].)

misconduct, but until 1986 when the *Rita M.* case was decided (187 Cal.App.3d 1453), plaintiff could still have asserted that the church was responsible for Llanos's conduct as a matter of law under the doctrine of respondeat superior.[10]

Plaintiff's claims of delayed accrual and estoppel by concealment are to no avail. In support of his position, he relies on *Strasberg* v. *Odyssey Group, Inc.* (1996) 51 Cal.App.4th 906 [59 Cal.Rptr.2d 474]. There, the administrator of an estate concealed items of personal property whose existence were unknown to the intended beneficiary. Many years later, the beneficiary learned of these items while looking through an auction catalog. The court held that the administrator, "acting in her capacity of a fiduciary, wrongfully concealed the items [and a]ccordingly, the statute of limitations was tolled until the beneficiary discovered . . . the existence of the cause of action for . . . conversion." (*Id.* at p. 917.)

*Strasberg* has no significance in this case other than being another example of the type of situation referenced in *Evans* v. *Eckelman, supra,* 216 Cal.App.3d at pages 1614-1615, where the injury itself has been hidden. However, there has been no allegation here that the church concealed the fact of plaintiff's underlying injury. Plaintiff asserts that, as his fiduciary, the church had an obligation to disclose the 1973 and 1974 accusations against Father Llanos and breached that duty by failing to come forward with this information. The assertion begs the question. The wrongful conduct alleged against the church was its inaction in the face of the accusations against Father Llanos. Thus, what the church failed to disclose was merely evidence that the wrong had been committed. If plaintiff's approach were to prevail, then any time a tortfeasor failed to disclose evidence that would demonstrate its liability in tort, the statute of limitations would be tolled under the doctrine of concealment. Regardless of whether the issue is characterized as fraud by concealment or equitable estoppel, this is not the law.

Based on the foregoing, we conclude that the one-year statute of limitations on plaintiff's negligent supervision/retention cause of action and the three-year statute of limitations on his fraud claim began to run when plaintiff reached the age of majority in 1983. They had long since expired when the instant action was filed on July 15, 1996.[11]

---

[10]By parity of reasoning, the three-year statute of limitations on plaintiff's fraud claim would have expired in 1986, when plaintiff became 21 years of age.

[11]Based on this disposition, we need not discuss whether fiduciary relationships existed between the parties or whether plaintiff stated a valid cause of action for conspiracy.

## DISPOSITION

The judgments are affirmed.

Ortega, Acting P. J., and Dunn, J.,* concurred.

A petition for a rehearing was denied October 28, 1998, and appellant's petition for review by the Supreme Court was denied January 27, 1999. Kennard, J., was of the opinion that the petition should be granted.

---

*Judge of the Municipal Court for the Long Beach Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.