[No. B183033. Second Dist., Div. Eight. Dec. 27, 2006.]

DAVID DUTRA, Plaintiff and Appellant, v.
DONALD EAGLESON, Defendant and Respondent.

**COUNSEL**

Picone & Defilippis and Steve M. Defilippis for Plaintiff and Appellant.

Zalkin & Zimmer, Irwin M. Zalkin, Michael H. Zimmer, Devin M. Storey and Michael J. Kinslow as Amici Curiae on behalf of Plaintiff and Appellant.

Hoge, Fenton, Jones & Appel, James E. Towery, Adrienne Ziff Cohn; Howie & Smith and Audrey Smith for Defendant and Respondent.

OPINION

**RUBIN, J.**—Plaintiff David Dutra appeals from the judgment of dismissal entered after the trial court sustained without leave to amend the demurrer of defendant Donald Eagleson because the court believed Dutra's complaint was untimely under the statute of limitation's one-year revival period for certain childhood sexual abuse claims. (Code Civ. Proc., § 340.1, subd. (c).) We conclude that the complaint cannot be read as falling within that revival period; instead, Dutra's claims appear subject to a limitations period that expires three years after Dutra discovered or should have discovered the cause of his injuries. (Code Civ. Proc., § 340.1, subd. (a)(1).) Because there are no allegations concerning Dutra's discovery of the cause of his injuries, and because Eagleson did not assert this theory below, we reverse the judgment.

## FACTS AND PROCEDURAL HISTORY

In December 2003, David Dutra sued former Catholic school teacher Donald Eagleson and the estate of the late Gordon Wilcox, a Catholic priest, contending that they sexually abused Dutra in 1971 when he was approximately 14 years old. Dutra also sued the Diocese of Oakland (the Diocese), the Congregation of Holy Cross, and Moreau High School, alleging they were liable as the entities that hired, assigned, and supervised Eagleson and Wilcox.[1]

Because Dutra was more than 25 years old when the complaint was filed, he was required to file a certificate of merit (COM) from his lawyer and a mental health practitioner attesting that the action was meritorious. (Code Civ. Proc., § 340.1, subds. (g), (h).)[2] Dutra, who was in prison and representing himself at the time, did not file a COM with his original complaint.[3] Dutra later hired a lawyer who filed a COM on April 9, 2004, followed by a first amended complaint almost two weeks later. That pleading was superseded by a second amended complaint and, in October 2004, by a form master

---

[1] When the original complaint was filed, all defendants were identified as Does. In later versions of the complaint, Dutra identified the parties by name. The second amended complaint alleges that Moreau High School (the school) was owned and operated by the Diocese and the Congregation of Holy Cross (the Congregation). For ease of reference, we will refer to the Diocese, the Congregation and the school collectively as the Diocese. Eagleson died in October 2004, and the action continues against his estate. (Code Civ. Proc., § 377.40.) We will refer to Eagleson's estate as Eagleson. Our opinion addresses the demurrer filed by *Eagleson only*; the other named defendants are not parties to this appeal.

[2] All further undesignated section references are to the Code of Civil Procedure.

[3] When Dutra filed his complaint, he was (and remains) in prison after being convicted of murdering his wife. Dutra contends the murder was the result of years of repressed rage following the alleged acts of sexual abuse.

complaint after Dutra's action was joined with the statewide coordinated actions for childhood sex abuse against various entities and individuals related to the Catholic church.[4]

In February 2005, Eagleson demurred to Dutra's master complaint, contending that it was barred by the statute of limitations because the COM was not filed until after the limitations period had expired. The demurrer was sustained without leave to amend and a judgment of dismissal was entered. Eagleson's demurrer, and the trial court's ruling, were based on the assumption that Dutra's claims were brought pursuant to the one-year revival period for certain previously time-barred childhood sex abuse claims that took effect on January 1, 2003 (the 2003 revival period). (§ 340.1, subds. (c), (d).) Relying on *Doyle v. Fenster* (1996) 47 Cal.App.4th 1701 [55 Cal.Rptr.2d 327], Eagleson reasoned, and the trial court agreed, that even though Dutra's original complaint was filed before the revival period expired, the COM was an aspect of the complaint that should have been filed at the same time. Because Dutra's COM was not filed until April 2004—after the 2003 revival period expired—the trial court ruled that the action was barred by the statute of limitations.

Dutra's appeal from the judgment dismissing his action was also briefed and argued by both parties on the assumption that his action as to Eagleson was subject to the 2003 revival period. *After* oral argument, we received a letter from amicus curiae counsel stating that he would discuss *during* oral argument the decision in *Aaronoff v. Martinez-Senftner* (2006) 136 Cal.App.4th 910 [39 Cal.Rptr.3d 137] (*Aaronoff*). Amicus curiae counsel did not discuss that case during oral argument, however. *Aaronoff* clarified that the 2003 revival period did not apply to direct perpetrator defendants, who are subject instead to a limitations period that expires on the later of either a

---

[4] Dutra's complaint is one of many from throughout the state against various entities and individuals affiliated with the Catholic church for childhood sexual abuse. Those cases have been coordinated in the Los Angeles County Superior Court and the Alameda County Superior Court. The Second District Court of Appeal has been designated as the intermediate appellate court for the coordinated cases. The Bay Area cases, including appellants', are known as *The Clergy Cases III*. (Cal. Rules of Court, rule 1550(c).)

*The Clergy Cases III* include: *The Roman Catholic Bishop of Oakland v. Superior Court (Thatcher)* (B179053); *The Roman Catholic Archbishop of San Francisco v. Superior Court (Kavanaugh)* (B181245); *John Doe 1 et al. v. The Roman Catholic Bishop of Oakland* (B181520); *Sarah W. v. Does 1 et al.* (B182149); *Perez et al. v. Richard Roe 1 et al.* (B182814); *Jane Doe 1 et al. v. James Roe 1* (B184048); *The Roman Catholic Bishop of San Francisco v. Superior Court (John Doe 16)* (B184213); *George Doe v. The Roman Catholic Bishop of Stockton* (B185440); *Lopes v. De La Salle Institute* (B185910); *The Redemptorist Society of California, Inc. v. Superior Court (Marley)* (B186874); *James Doe et al. v. The Catholic Diocese of Monterey et al.* (B187648); *Dutra et al. v. Congregation of Holy Cross et al.* (B188393); *Oregon Province of the Society of Jesus v. Superior Court (Brooks)* (B189394); and *James Doe 1 et al. v. The Archbishop of San Francisco et al.* (B192531).

plaintiff's 26th birthday, or three years from the date plaintiff discovered or should have discovered that psychological injury occurring after turning 18 was caused by sexual abuse during childhood. (§ 340.1, subd. (a)(1); *Aaronoff,* at pp. 919–921.) After reading *Aaronoff,* we reexamined the record and became concerned that Dutra's claims against Eagleson were in fact subject to the limitations period for direct perpetrators, and not the 2003 revival period. If so, the assumption underlying the trial court's rulings—that the limitations period expired at the end of 2003 before Dutra's COM was filed—would evaporate. Because Dutra was well over age 25 when he first sued, and because none of his pleadings addressed the discovery rule of section 340.1, subdivision (a)(1), it was impossible to determine whether *that* limitations period had expired before Dutra's COM was filed. We vacated the submission of this matter and directed the parties to file new briefs addressing that issue.

After considering the supplemental briefs, we conclude below that, as currently and previously pleaded, Dutra's claims against Eagleson appear to be subject to the discovery rule of section 340.1, subdivision (a)(1), not the 2003 revival period, and that a demurrer on limitations grounds should have been sustained, but with leave to amend.

## STANDARD OF REVIEW

In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiff/appellant. Regardless of the label attached to the cause of action, we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745 [100 Cal.Rptr.2d 39].) However, the judgment will be affirmed if it is proper on any of the grounds raised in the demurrer, even if the court did not rely on those grounds. (*Pang v. Beverly Hosp., Inc.* (2000) 79 Cal.App.4th 986, 989 [94 Cal.Rptr.2d 643].)

We do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed. When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. (§ 430.30, subd. (a); *Black v. Department of Mental Health, supra,* 83 Cal.App.4th at p. 745.) We may take judicial notice of the

records of a California court. (Evid. Code, § 452, subd. (d).) We must take judicial notice of the decisional and statutory law of California and the United States. (Evid. Code, § 451, subd. (a).)

## DISCUSSION

### 1. *History of the Limitation Periods of Section 340.1*

Dutra alleges he was sexually abused in 1971. Under the limitations period in effect at that time, his claims would have been barred within one year (§ 340), but were extended until he reached age 19 because he was a minor when the abuse occurred. (§ 352, subd. (a); *Tietge v. Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382, 385 [64 Cal.Rptr.2d 53] (*Tietge*).) Because Dutra was 14 when the abuse occurred, his claims were time-barred as of approximately 1976.

The Legislature added section 340.1 in 1986, enlarging the limitations period to three years for sexual abuse of a child under age 14 by a household or family member. However, that amendment did not apply to institutional defendants such as the Diocese. (*Tietge, supra*, 55 Cal.App.4th at p. 385.) Section 340.1 was amended several times after that, including a 1994 amendment that extended the statute of limitations to the later of either the plaintiff's 26th birthday, or three years after the plaintiff discovers or should have discovered that psychological injury was caused by the sexual abuse. (Former § 340.1, subd. (a).) That amendment extended to only the perpetrator, not to entities that employed or otherwise supervised the perpetrator. (*Tietge, supra*, at pp. 385–388.) Effective 1998, that defect was remedied when the Legislature again amended section 340.1, subdivision (a) to include causes of action for sex abuse against persons or entities other than the perpetrator. (*Mark K. v. Roman Catholic Archbishop* (1998) 67 Cal.App.4th 603, 610, fn. 4 [79 Cal.Rptr.2d 73]; see Historical and Statutory Notes, 13C West's Ann. Code Civ. Proc. (2006 ed.) foll. § 340.1, pp. 172–173.)

■ Section 340.1 now provides that the limitations period for actions to recover damages for childhood sexual abuse is the later of either the plaintiff's 26th birthday or three years from the date the plaintiff discovers, or reasonably should have discovered, that psychological injury occurring after turning 18 was caused by the sexual abuse. (§ 340.1, subd. (a).) The subdivision (a) limitations period applies to three types of actions: in subdivision (a)(1), to actions "against any person for committing an act of childhood sexual abuse," i.e, the direct perpetrator; in subdivision (a)(2), to

actions "for liability against any person or entity *who owed a duty of care* to the plaintiff, where a wrongful or negligent act by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff" (italics added); and in subdivision (a)(3), to actions "for liability against any person or entity where *an intentional act* by that person or entity was a legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff." (Italics added.)

The actions described by subdivision (a)(2) and (3) may not be brought after a plaintiff turns 26 (§ 340.1, subd. (b)(1)), unless "the person or entity [whose alleged conduct falls within subdivision (a)(2) and (3)] knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment." (§ 340.1, subd. (b)(2).) The 2003 revival period is found in section 340.1, subdivision (c), and is expressly linked to those claims covered by subdivision (b)(2): "Notwithstanding any other provision of law, any claim for damages described in paragraph (2) or (3) of subdivision (a) that is permitted to be filed pursuant to paragraph (2) of subdivision (b) that would otherwise be barred as of January 1, 2003, solely because the applicable statute of limitations has or had expired, is revived, and, in that case, a cause of action may be commenced within one year of January 1, 2003." By its own terms, the subdivision (c) revival statute does not apply to actions against a direct perpetrator under subdivision (a)(1).

### 2. *Aaronoff*

The plaintiff in *Aaronoff, supra*, 136 Cal.App.4th 910, sued her parents in 1997 for childhood sexual abuse. The 1997 lawsuit had been dismissed under the then-existing limitations period because she was more than 26 years old and had discovered the cause and effect of her injuries more than three years before filing her complaint. She sued again in 2003 under the 2003 revival provisions.[5] Her second amended complaint in the 2003 action alleged that she had been an employee of the family business when her father sexually abused her, and that the abuse occurred at the workplace. The plaintiff alleged she qualified for revival of her claims because her mother, who also worked

---

[5] The 2003 revival statute expressly permits the filing of an action based on claims in a complaint that had previously been dismissed solely because the statute of limitations had run before the original action was filed. (§ 340.1, subd. (d)(1).) The issue of whether the Legislature's attempt to revive such claims violates the California Constitution's separation of powers doctrine is currently before us in *Perez v. Roe 1* (2006) 146 Cal.App.4th 171.

in the business, had been aware of the abuse and took no steps to safeguard the plaintiff or otherwise prevent the assault. The appellate court affirmed the judgment dismissing the plaintiff's action on statute of limitations ground after the trial court sustained the defendants' demurrers to the second amended complaint.

Although section 340.1, subdivision (a) appears to allow plaintiffs to sue until their 26th birthday or three years from the discovery of adult-onset psychological injuries in all three types of actions described in subdivision (a)(1) through (3), the *Aaronoff* court held that section 340.1, subdivision (b)(1) and (2) had to be read as cutting off at age 26 all claims under subdivision (a)(2) (against person or entity owing legal duty of care whose wrongful or negligent act was legal cause of sexual abuse) and (3) (against person or entity whose intentional act was legal cause of sexual abuse) unless the third party defendant knew, had reason to know, or was otherwise on notice of a representative's sexual misconduct and took no steps to prevent it. (*Aaronoff, supra,* 136 Cal.App.4th at p. 919.) In short, only those actions against the actual perpetrator, or against a third party defendant described in subdivision (b)(2), could be brought after the plaintiff's 26th birthday, up to three years after the plaintiff discovered the cause of his adult-onset psychological injuries. All other cases falling within subdivision (a)(2) and (3) of section 340.1 had to be brought before the plaintiff turned 26.

The 2003 revival period was also expressly limited to the class of cases defined by subdivision (b)(2). (*Aaronoff, supra,* 136 Cal.App.4th at pp. 919–920.) Because the father was the alleged perpetrator, the court held that the daughter's claims against him were subject to the age 26 or three-year discovery rule applicable to cases brought under subdivision (a)(1). While the claims described in subdivision (a)(2) and (3) might theoretically apply to an actual perpetrator of childhood sexual abuse, when juxtaposed with subdivision (a)(1)—which was expressly and specifically applicable to perpetrators—it "would be nonsensical to interpret" subdivision (a)(2) and (3) as applying "two separate limitations schemes to the perpetrator of the abuse." (136 Cal.App.4th at pp. 920–921.) The *Aaronoff* court took judicial notice of the fact that the plaintiff had turned 26 in 1989. It also took judicial notice that the issue of when she discovered her injuries had been litigated against her in her 1997 action, and therefore collaterally estopped her from relitigating that issue. Based on that, the court held the 2003 action against the father was time-barred under section 340.1, subdivision (a)(1), even though she filed her second lawsuit during the 2003 revival period. (136 Cal.App.4th at pp. 920–921.)

As for the claims against the mother, the *Aaronoff* court considered the language of section 340.1, subdivision (b)(2) and the legislative history of subdivision (c). The court then held that subdivision (b)(2) did not apply to parental relationships. Instead, the legislation was aimed at "third party defendants who, by virtue of certain specified relationships to the perpetrator (i.e., employee, volunteer, representative, or agent), could have employed safeguards to prevent the sexual assault. It requires the sexual conduct to have arisen through an exploitation of a relationship over which the third party has [certain limited forms of] control. In other words, the perpetrator's access to the victim must arise out of the perpetrator's employment with, representation of, agency to, etc., the third party, and the third party must be in such a relationship with the perpetrator as to have some control over the perpetrator." (*Aaronoff, supra,* 136 Cal.App.4th at p. 921.) By taking judicial notice of the plaintiff's parental relationship with the mother as set forth in the earlier action, the *Aaronoff* court held that the plaintiff could not take advantage of the 2003 revival period when suing her mother a second time. (*Id.* at p. 923.)

### 3. *Dutra's Claims Against Eagleson and the Diocese*

Dutra's second amended complaint was filed in September 2004. It alleged that Eagleson and Wilcox were under the direct supervision and control of the Diocese, but alleged that Eagleson was also under the direct supervision and control of Wilcox. Eagleson and Wilcox were named as defendants in two causes of action: the first for intentional sexual battery; and the fourth, for interfering with Dutra's personal rights by threats and intimidation in violation of Civil Code section 52.1. The Diocese was named in the three other causes of action: the second, for breach of fiduciary duty; the third, for negligent retention, supervision, and failure to warn; and the fifth, for vicarious liability, based on the Diocese's alleged knowledge of Eagleson's and Wilcox's propensity for pedophilia.[6]

In October 2004, Dutra's action was made part of the coordinated statewide actions for childhood sexual abuse against various entities and individuals related to the Catholic church. Pursuant to the rules of the coordination trial court, Dutra then filed a form master complaint that had been adopted for all plaintiffs. The master complaint includes eight causes of action: (1) negligent hiring, supervision, or retention; (2) general negligence; (3) breach of fiduciary duty; (4) intentional infliction of emotional distress (IIED); (5) sexual battery; (6) civil rights violations under Civil Code section

---

[6] The original and first amended complaints were nearly identical, although the breach of fiduciary duty claims in those pleadings were ambiguous enough to include Eagleson and Wilcox as defendants.

52.1; (7) vicarious liability; and (8) successor liability of institutional defendants. In a December 2004 order overruling various demurrers to the master complaint, the trial court apparently limited all but the fiduciary duty claim to institutional defendants such as the Diocese. In regard to the causes of action for negligent retention or hiring, general negligence, and IIED, the coordination court ruled that the master complaint was sufficient and did not require plaintiffs "to plead facts concerning what the Church defendants knew and when they knew it because that information cannot be reasonably obtained except through pre-trial discovery." The coordination court said that the general negligence claim adequately alleged "that the Church defendants had a general duty to take reasonable measures to protect children in their care and breached that duty." While the vicarious liability claims were presumably based on the intentional torts of the alleged perpetrators, the coordination court decided to treat that cause of action as one "for common law battery against the Church defendants because the alleged perpetrator battered the plaintiffs and the Church defendants are liable for the actions of the alleged perpetrator" under various theories. The court ruled that battery claims against the alleged perpetrators should be identified as such under applicable theories of statutory or common law. The fiduciary duty claims were deemed by the court to extend to both the alleged perpetrators and the institutional defendants.[7]

In Dutra's master complaint, he identified Wilcox and Eagleson as the perpetrators of sexual abuse, and alleged that the abuse occurred in 1971. He did not list Wilcox as a defendant, however, and did not check the box that would have allowed him to state a sexual battery claim against either Wilcox or Eagleson as individual perpetrators. He did check the boxes to indicate he was asserting a negligent hiring and supervision claim against the Diocese, a general negligence claim that said it was against all defendants, a breach of fiduciary duty claim against the Diocese and Eagleson, an IIED claim that purported to be against all defendants, and a vicarious liability claim against the Diocese. In the sections of the master complaint relating to the applicable statute of limitations, Dutra did not check the boxes indicating that he was subject to the actual perpetrator limitations period of section 340.1, subdivision (a). Instead, he checked the boxes indicating that his action was subject to the 2003 revival period.[8]

---

[7] As part of that same order, the trial court sustained without leave to amend demurrers to Dutra's breach of fiduciary duty claim. The parties do not mention this order, and Dutra does not address it on appeal. We therefore deem that issue waived and disregard that cause of action in our analysis.

[8] Dutra checked off two boxes stating that his action was against a person or entity pursuant to section 340.1, subdivision (a)(2), and against a person or entity pursuant to section 340.1, subdivision (a)(3). He also checked off a box that tracked the language of section 340.1, subdivision (b)(2), alleging that defendants knew or should have known of an employee's

### 4. *Dutra's Claims Against Eagleson Are Not Covered by the 2003 Revival Period*

As noted above, Eagleson's demurrer and the parties' appellate arguments were based on the assumption that Dutra's claims against Eagleson were subject to the 2003 revival period. Based on that assumption, Eagleson argued, and the trial court ruled, that Dutra's action was not timely because Dutra did not file a (COM) until four months after the revival period ended. The apparent source of this critical assumption is Dutra's master complaint.[9] We conclude that this assumption was faulty.

In order for Dutra's claims against Eagleson to qualify for the 2003 revival period, Dutra must allege that Eagleson's liability is founded upon Eagleson's status as a third party who knew, had reason to know, or was otherwise on notice that *Eagleson's* employee or agent engaged in unlawful sexual conduct, and that Eagleson took no steps to safeguard Dutra from that employee's conduct. (§ 340.1, subds. (b)(2), (c); *Aaronoff, supra,* 136 Cal.App.4th at pp. 920–921.) While Dutra's master complaint alleges that "defendants, and each of them," fell within section 340.1, subdivision (b)(2), that boilerplate allegation is contradicted by the specific allegations in Dutra's first cause of action for negligent hiring, supervision, or retention, that it was the Diocese alone which committed such negligence, along with a separate allegation that the alleged abuse was committed by Eagleson and Wilcox.

In Dutra's supplemental briefing, he contends that Eagleson's conduct fell within section 340.1, subdivision (b)(2) because the second amended complaint alleged that defendants were each other's agents, and that Eagleson and Wilcox were under a duty to protect him from the foreseeable misconduct of third parties, "including defendants' agents and employees, and . . . Eagleson and . . . Wilcox." As with the master complaint, these ambiguous boilerplate allegations of the second amended complaint are overcome by more specific

---

unlawful sexual conduct but took no steps to prevent it, and that the action was filed within the statute of limitations pursuant to the 2003 revival period of section 340.1, subdivision (c). He did not check off boxes that would have alleged he was under the age of 26—which he was not—or fell within the three-year discovery rule of section 340.1, subdivision (a).

[9] As noted, the master complaint did not include a battery claim against Eagleson, purported to include Eagleson as a defendant in a general negligence claim that the trial court designed for institutional defendants, and alleged that Dutra complied with the statute of limitations by filing within the 2003 revival period, not within the limitations period prescribed for claims against actual perpetrators. (§ 340.1, subd. (a)(1); *Aaronoff, supra,* 136 Cal.App.4th at pp. 920–921.)

allegations within that pleading.[10] In Dutra's second amended complaint, he named Eagleson and Wilcox in only two causes of action: for the intentional tort of sexual battery, and for violating his civil rights under Civil Code section 52.1 through acts of sexual abuse. Eagleson was not named in any cause of action based on the failure to supervise some other perpetrator. Dutra also alleged that Eagleson was under the control, direction, and supervision of both the Diocese *and* Wilcox, but did not allege that Wilcox was under Eagleson's direction or control. These specific allegations undermine any attempt by Dutra to argue on this appeal that Wilcox was Eagleson's employee or agent, or that Eagleson was in a position to control Wilcox's conduct. (*Aaronoff, supra*, 136 Cal.App.4th at pp. 920–921.) Taken together, the allegations of the various pleadings lead us to conclude that Eagleson's alleged misconduct did not fall within section 340.1, subdivision (b)(2), and that, as a result, Dutra's causes of action against Eagleson were not subject to the 2003 revival period.[11]

■ Dutra contends that *Aaronoff* does not apply here because its holding was based solely on the existence of the parent-child relationship between the parties, and that its statement that claims against actual perpetrators are subject to the age 26 or three-year discovery rule of subdivision (a)(1) was mere dicta. We disagree. The holding that the class of cases described by section 340.1, subdivision (b)(2) does not apply to the parent-child relationship applied to only the defendant mother, who was sued in the 2003 complaint because she failed to supervise the father, who allegedly committed the sexual abuse of the plaintiff. Because this case does not involve such a relationship, we need not decide that precise issue. We do agree with *Aaronoff* that the plain language of the 2003 revival period of subdivision (c) makes clear that the one-year revival period applies to only those cases falling under subdivision (a)(2) and (3) that meet the additional requirements of subdivision (b)(2). As just discussed, the pleadings in this case do not state such a claim against Eagleson. *Aaronoff*'s assertion that actual perpetrators of childhood sexual abuse are governed solely by the age 26 or three-year

---

[10] We accept Dutra's invitation to determine the validity of his master complaint by examining the allegations of his earlier pleadings. (*Aaronoff, supra*, 136 Cal.App.4th at p. 923 [factual allegations in a complaint omitted without explanation from later amended pleading may be considered when ruling on demurrer to the later pleading].)

[11] In Eagleson's supplemental brief, he argued only that Dutra's claims were subject to the 2003 revival period because that is what Dutra pleaded in the master complaint. As just discussed, we do not limit ourselves to the allegations of the master complaint and have considered the earlier pleadings. Both the master complaint and the second amended complaint include allegations contradictory to any assertion that Eagleson's alleged misconduct fell within section 340.1, subdivision (b)(2). We do not address whether, in light of the previous pleadings, it would be appropriate in an amended complaint for Dutra to allege that Wilcox or anyone else was acting under Eagleson's direction or control.

discovery rule of subdivision (a)(1) was not dicta, but was instead a separate holding based on the defendant father's status as the alleged perpetrator. (*Aaronoff, supra*, 136 Cal.App.4th at pp. 920–921.) We agree with that court's commonsense interpretation of section 340.1, and also hold that actions for childhood sexual abuse against the perpetrator based solely on his status as a perpetrator are subject to the age 26 or three-year discovery rule of subdivision (a)(1).[12]

5. *The Master Complaint Is Barred on Its Face by the Statute of Limitations, but Dutra Should Be Granted Leave to Amend to Allege Compliance With the Three-year Discovery Rule*

As discussed above, the pleadings cannot be read as alleging that Eagleson's liability was based on his failure to control the conduct of Wilcox, or otherwise fell within the requirements of section 340.1, subdivision (b)(2). Accordingly, the entire assumption underlying the demurrers, the trial court's ruling, and the parties' appellate arguments—that the statute of limitations provided by the 2003 revival period expired four months before Dutra filed his COM—has disappeared. Assuming for discussion's sake only that Dutra was required to file his COM before the limitations period expired, the success of Eagleson's demurrer and the validity of the trial court's ruling require a determination of what limitations period applied, and when that period expired. As discussed next, while we can determine the appropriate limitations period, nothing in the pleadings tells us when or whether that limitations period has expired.

Dutra has consistently alleged that Eagleson and Wilcox were his abusers. In the three pleadings filed before the master complaint, Dutra alleged that Eagleson was under the direction, supervision, and control of both the Diocese and Wilcox, and never alleged that Wilcox (or any unnamed abuser) was under Eagleson's direction and control. The master complaint alleged that the Diocese was liable for negligence in hiring, retaining, and supervising Eagleson, but did not allege that Eagleson directed, supervised, or controlled anyone else. We conclude the only fair reading of the pleadings is that Eagleson's alleged misconduct is based solely on his role as an actual perpetrator of childhood sexual abuse. As a result, because Dutra was more than 26 years old when his complaint was filed, *as to Eagleson* his action is

---

[12] We do not hold that someone sued as an actual perpetrator can never fall within the terms of subdivision (b)(2) as well, because it is possible that such a person might have separately failed to protect a plaintiff from abuse by another person as provided by that subdivision.

timely only if it were filed within three years of his discovery that adult-onset psychological injuries were caused by the childhood abuse. (§ 340.1, subd. (a)(1); *Aaronoff, supra*, 136 Cal.App.4th at pp. 919–921.)[13]

Dutra has never alleged facts concerning his discovery of adult-onset psychological injuries from his alleged childhood sexual abuse. It is therefore impossible to tell when he first allegedly discovered those injuries and when the concomitant three-year limitations period of section 340.1, subdivision (a)(1) began to run. Even if Dutra were required to file a COM before the limitations period ran, it is therefore also impossible to determine that date, leaving us unable to affirm the trial court's orders.[14]

■ Even so, as to Eagleson, Dutra's master complaint facially shows that it is barred by the statute of limitations. Dutra alleged that the abuse took place in 1971 when he was 14. The allegations of the master complaint, combined with the allegations of the earlier pleadings, show that, as to Eagleson, Dutra's action was subject to the three-year discovery rule of section 340.1, subdivision (a). Dutra was therefore required to plead facts bringing him within that rule, specifically that he sued within three years of the time he actually or reasonably should have discovered that psychological injury occurring after he turned 18 was caused by the childhood sexual abuse. (*Lent v. Doe* (1995) 40 Cal.App.4th 1177, 1186 [47 Cal.Rptr.2d 389] [interpreting section 340.1, subd. (a)]; *County of Alameda v. Superior Court* (1987) 195 Cal.App.3d 1283, 1286 [241 Cal.Rptr. 312] [where a complaint shows on its face that a cause of action is barred by the statute of limitations, the plaintiff must plead facts showing a ground for suspension, delayed accrual, or another theory for avoiding the statute].) Because he did not, a demurrer on statute of limitations grounds would have been proper under that theory. However, because that ground was never raised in Eagleson's demurrer, we cannot rely on it and must reverse. (*Morgan v. Asher* (1920) 49 Cal.App. 172, 183 [193 P. 288] [order sustaining demurrer may not be affirmed based on theory not raised below; judgment reversed]; see *Pang v. Beverly Hosp., Inc., supra*, 79 Cal.App.4th at p. 989 [judgment will be affirmed if it is proper on any of the grounds raised in the demurrer].)

---

[13] See footnote 11, *ante*.

[14] For instance, if Dutra could plead facts showing that his discovery occurred less than three years before he filed his COM, then the keystone of Eagleson's demurrer would crumble.

## DISPOSITION

For the reasons set forth above, the judgment is reversed. Each party to bear its own costs on appeal.

Cooper, P. J., and Flier, J., concurred.

A petition for a rehearing was amended January 26, 2007, and the opinion was modified to read as printed above.