[No. B198136. Second Dist., Div. Eight. Jan. 29, 2008.]

RICHARD DOE et al., Plaintiffs and Appellants, v.
SALESIAN SOCIETY et al., Defendants and Respondents.

## COUNSEL

Furtado, Jaspovice & Simons and Richard J. Simons for Plaintiffs and Appellants.

Foley & Lardner, Stephen A. McFeely, Tami S. Smason; Sedgwick, Detert, Moran & Arnold and Thomas A. Delaney for Defendants and Respondents.

O<small>PINION</small>

**RUBIN, J.**—Richard Doe and Gil Doe appeal from the summary judgment entered against them in their action against the Salesian Society based on allegations that they were the victims of childhood sexual molestation by one of the society's priests. The trial court ruled that their action was barred by the statute of limitations (Code Civ. Proc., § 340.1) because there was no evidence to show that the Society knew ahead of time that the priest posed a risk of such conduct. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2003, Gil Doe and Richard Doe sued the Salesian Society (the Society), a religious order of the Roman Catholic Church, alleging that one of the Society's priests—Richard Presenti—sexually abused them in, respectively, 1962 and 1972.[1] Appellants each alleged they were orally copulated and masturbated by Presenti while attending the Society's Boy's Camp in Middletown, California. Their action was brought pursuant to the one-year revival period for previously time-barred claims. (Code Civ. Proc., § 340.1, subds. (a), (b).)[2] The revival period applied only to actions against entities like the Society if they knew, had reason to know, or were otherwise on notice of an employee's unlawful sexual conduct and failed to take reasonable steps to prevent such conduct in the future. (§ 340.1, subds. (a)(2), (b)(2).)[3]

---

[1] Presenti was a brother in the order until 1968, when he became a priest. For ease of reference, we will sometimes refer to Gil Doe and Richard Doe individually by their first names only and collectively as appellants.

[2] All further section references are to the Code of Civil Procedure.

[3] The action was originally filed in Sonoma County but was later coordinated in Alameda County with the many other such actions brought in Northern California. The complaint is one of many from throughout the state against various entities and individuals affiliated with the Catholic church for childhood sexual abuse. Those cases have been coordinated in the Los Angeles County Superior Court and the Alameda County Superior Court. The Second District Court of Appeal has been designated as the intermediate appellate court for the coordinated cases. The Bay Area cases, including appellants', are known as *The Clergy Cases III.* (Cal. Rules of Court, former rule 1550(c) [now rule 3.550].)

*The Clergy Cases III* include: *The Roman Catholic Bishop of Oakland v. Superior Court (Thatcher)* (B179053); *The Roman Catholic Archbishop of San Francisco v. Superior Court (Kavanaugh)* (B181245); *John Doe 1 et al. v. The Roman Catholic Bishop of Oakland* (B181520); *Sarah W. v. Does 1 et al.* (B182149); *Perez et al. v. Richard Roe 1 et al.* (B182814); *Jane Doe 1 et al. v. James Roe 1* (B184048); *The Roman Catholic Bishop of San Francisco v. Superior Court (John Doe 16)* (B184213); *George Doe v. The Roman Catholic Bishop of Stockton* (B185440); *Lopes v. De La Salle Institute* (B185910); *The Redemptorist Society of California, Inc. v. Superior Court (Marley)* (B186874); *James Doe et al. v. The Catholic Diocese of Monterey et al.* (B187648); *Dutra et al. v. Congregation of Holy Cross et al.* (B188393); *Oregon Province of the Society of Jesus v. Superior Court (Brooks)* (B189394); *James Doe 1 et al. v. The Archbishop of San Francisco et al.* (B192531); *Dutra v. Eagleson* (B183033); and *Doe 17 v. Salesian* (B195450).

The Society brought a summary judgment motion, contending that appellants' complaint did not qualify under the revived limitations period of section 340.1 because there was no evidence the Society had the requisite knowledge that Presenti had sexually abused anyone before he abused appellants. The following evidence submitted in support of the Society's motion was undisputed: No one witnessed either alleged incident; Gil did not report what happened to him until 30 years later, in 1992; Richard reported his 1972 incident the day after it happened (some 10 years after Gil's molestation); Richard's incident was investigated by Harry Rasmussen, who was at the time the Society's provincial for the western region; that was the only allegation of sex abuse by a priest that Rasmussen could recall;[4] the Society's current provincial examined the Society's files and found nothing concerning allegations of abuse against Presenti; and appellants admitted during discovery that they had no evidence to directly show that the Society knew or was on notice that Presenti was molesting young boys before Presenti allegedly abused appellants.

Although appellants did not dispute the Society's evidence, they countered with the following evidence: Presenti admitted to fondling and masturbating Richard and two other boys sometime during 1970 and 1973, but continued to lie by denying the molestation of Gil and by failing to acknowledge that he orally copulated appellants; Presenti lied to Rasmussen and other Society officials when asked about complaints of his sexual abuse; even after Richard reported his incident in 1972, the Society continued to employ Presenti, who eventually rose through its ranks to become its treasurer; the Society's records concerning Presenti do not include reports about his sexual misconduct until after Gil's 1992 report was made, and that information concerned appellants' claims only; and the Society did not document information concerning confirmed sexual abuse of its other clergy members, including Brother Salvatore Billante. Based on this evidence, appellants argued that Presenti's lies about the number of his victims and the nature of his acts of molestation support an inference that there were multiple victims. According to appellants, when combined with the Society's failure to document reports of abuse against Presenti, the evidence raised triable issues of fact that other incidents had been reported to the Society and that the absence of such reports from the Society's files cannot be believed as evidence that it lacked knowledge of Presenti's conduct.

---

[4] The record does not indicate whether Rasmussen reached any conclusions as a result of his investigation, but appellants do not contend that Rasmussen believed Richard's accusation. There is also an apparent conflict between Rasmussen and Richard over when the incident with Richard occurred. Richard claims it took place in 1972, but Rasmussen recalled that he was contacted in 1973, when he first became provincial. The parties agree that this conflict has no bearing on our analysis.

The trial court rejected appellants' conclusions about the evidence and entered judgment for the Society. This appeal followed.

## STANDARD OF REVIEW

Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (§ 437c, subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

A defendant moving for summary judgment meets its burden of showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (§ 437c, subds. (*o*)(2), (p)(2).) If the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of fact exists as to that cause of action or defense. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (§ 437c, subd. (p)(2).) A triable issue of material fact exists "if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. [Fn. omitted.]" (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

## DISCUSSION

■ Gil and Richard claim they were molested in, respectively, 1962 and 1972. At that time, the statute of limitations on their claims was one year, but, because they were minors, was extended until their 19th birthdays. (§§ 340, 352; *Dutra v. Eagleson* (2006) 146 Cal.App.4th 216, 222 [52 Cal.Rptr.3d 788]

(*Dutra*).) In *Dutra*, we set forth the lengthy legislative history of section 340.1, which was eventually amended to encompass claims against not just the perpetrator, but persons or entities that employed or supervised the perpetrator. (146 Cal.App.4th at p. 222.) In general, section 340.1 now provides that the limitations period for actions to recover damages for childhood sexual abuse is the later of either the plaintiff's 26th birthday or three years from the date the plaintiff discovers, or reasonably should have discovered, that psychological injury occurring after turning 18 was caused by the sexual abuse. (§ 340.1, subd. (a); *Dutra, supra*, at pp. 222–223.) After a plaintiff turns 26, claims may not be brought against persons or entities for breach of a legal duty of care to the plaintiff unless "the person or entity [whose alleged conduct falls within subdivisions (a)(2) and (a)(3)] knew or had reason to know, or was otherwise on notice, of any unlawful sexual conduct by an employee, volunteer, representative, or agent, and failed to take reasonable steps, and to implement reasonable safeguards, to avoid acts of unlawful sexual conduct in the future by that person, including, but not limited to, preventing or avoiding placement of that person in a function or environment in which contact with children is an inherent part of that function or environment." (§ 340.1, subd. (b)(2).) In 2002, the Legislature amended section 340.1 to revive previously time-barred claims that fell within section 340.1, subdivision (b)(2). (§ 340.1, subd. (c); *Dutra, supra*, at p. 223.)

Appellants concede that their causes of action are subject to the revived limitations period of section 340.1, subdivision (c), and that in order to qualify under that provision, they must produce evidence that the Society knew or had reason to know, or was otherwise on notice of any unlawful sexual conduct by Presenti. Relying exclusively on *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832 [41 Cal.Rptr.2d 192] (*Donchin*), a case with a significantly different factual setting, appellants contend there is evidence to cast doubt on the Society's denial that it knew nothing beforehand about Presenti's sexual misconduct, and that they therefore raised triable issues of fact on that point. The plaintiff in *Donchin* was injured by Guerrero's two Rottweilers while out walking her dog. Donchin sued Guerrero and Guerrero's landlord—Swift—alleging that Swift knew the Rottweilers were dangerous. Swift was granted summary judgment based on his declaration that he had not known the dogs were vicious.

The appellate court reversed based on two kinds of evidence. First, there was evidence that when Swift learned of the incident, he initially denied, but later admitted, knowing that the dogs lived on his rental property. Contrary

evidence showed that the dogs were mentioned in the rental agreement and that Swift had played with the dogs during his frequent visits to the property. Second, there was evidence from a neighbor and a package deliveryman that the dogs ran loose and threatened to attack them several times. This was supplemented by a declaration from an expert that if the dogs had acted viciously toward others, then they must have acted the same way when Swift visited the property.

The appellate court reasoned that Swift's initial denial that he even knew the dogs were on the property—which the court dubbed a "false exculpatory statement"—was akin to evidence that Swift had a consciousness of guilt. The court held that when combined with the evidence concerning the dogs' previous displays of threatening conduct, a trier of fact could infer that when Smith lied about knowing the dogs were living on his property, his denial was fueled by his guilty knowledge that the dogs were dangerous. (*Donchin, supra,* 34 Cal.App.4th at pp. 1840–1843.)

Appellants contend *Donchin* applies here because Presenti lied about what he did and he was later promoted even after Richard's 1972 sexual abuse report was made, suggesting that the Society had a motive to protect Presenti and itself by omitting from its records any reference to claims that Presenti was sexually abusing children. This is shown, they contend, by the absence from Presenti's files of Richard's 1972 report and Gil's 1992 report, as well as by the absence of any reference to sex abuse by Brother Billante, who was convicted of such crimes in 1989. We disagree.

The lynchpin of the *Donchin* decision was the defendant's initial false denial of knowledge that his tenant's dogs lived at the rental property, allowing the inference that the defendant also knew about the dogs' documented displays of threatening and aggressive behavior. The defendant in this case is the Society, not Presenti, and evidence that Presenti lied about what he had done is therefore not relevant to the *Donchin* analysis. In fact, evidence that he lied to the Society cuts the other way and strengthens the Society's argument that it knew nothing about what Presenti had done.

Appellants contend that evidence casting doubt on the Society's denial of knowledge about Presenti that predates his abuse of them can also be found in the fact that the Society's files made no reference to abuse claims made against Presenti and Billante. As we understand it, appellants contend that because the Society's records did not mention their after-the-fact reports (in

1972 and 1992) about what Presenti had done, and because the Society's records made no mention of Billante's 1989 sexual molestation conviction, a trier of fact could infer that other reports about sex abuse by Presenti had been made before he molested appellants in 1962 and 1972 but, pursuant to the Society's pattern and practice, were not included in its files. In short, appellants contend that because the Society's records made no mention of Rasmussen's investigation of Richard's accusations, a trier of fact can infer that other reports of molestation by Presenti were received but also went undocumented before appellants were molested.

This contention suffers from two key evidentiary gaps. First, there is no evidence of incidents involving anyone that predates Gil's alleged 1962 molestation and Gil admitted he did not report what happened to him. Second, while Presenti admitted to molesting Richard and two other boys sometime during 1970 to 1973, given the speculative time period involved it is possible that the other victims were abused after Richard. There is also no evidence that the other victims ever reported what happened, and, even if they did, there is no way of knowing when those reports might have been made. Filling in these gaps requires us to speculate about the basis for the Society's knowledge asserted by appellants. Such speculation is impermissible, however, and is grounds for granting summary judgment. (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 163, 166 [10 Cal.Rptr.3d 18] [landlord not liable for tenant's dog bite incident where evidence that landlord knew the dog was dangerous was based on speculation, imagination, guesswork, or mere possibilities].)

■ Because the Society produced affirmative evidence from its past and current provincials that it received no reports of sexual misconduct by Presenti, and because appellants' contrary evidence does not raise an inference casting doubt on the credibility of that claim, the trial court did not err by granting summary judgment.[5] We wish to make clear, however, that our holding is based solely on the limited and insufficient facts presented by appellants. We recognize the difficulties plaintiffs face in obtaining the requisite evidence of notice under section 340.1 and, in an appropriate case with the appropriate facts, a reasonable inference of notice could be drawn even from what might otherwise appear to be minimal facts.

---

[5] Appellants' evidence about Brother Billante does not change our conclusions. First, evidence that there were no reports about Billante does not fill in the evidentiary gaps concerning the timing of when Presenti molested his two other acknowledged victims, or whether those victims ever complained to the Society during the relevant time period. Second, the record shows that Billante was convicted of acts of child molestation that occurred in the 1980's, but it does not show whether those victims reported those incidents to the Society as opposed to going directly to the police.

## DISPOSITION

For the reasons set forth above, the judgment is affirmed. Respondent to recover its costs on appeal.

Cooper, P. J., and Flier, J., concurred.