Filed 7/18/14  Barna v. Block CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KAREN BARNA et al., | B246065 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. LC096817) |
| v. | |
| DENNIS P. BLOCK et al., | |
| Defendants and Respondents. | |

APPEAL from judgment of the Superior Court of Los Angeles County, James A. Steele, Judge.  Affirmed.

Karen Barna, in pro. per., for Plaintiff and Appellant Karen Barna.

Sean Thomas, in pro. per., for Plaintiff and Appellant Sean Thomas.

Leo A. Schwarz for Defendants and Respondents.

_____

## INTRODUCTION

Plaintiffs Karen Barna and Sean Thomas (Plaintiffs) appeal from a judgment of dismissal following an order sustaining the demurrer of their former attorney, Defendant Dennis Block (Block). The trial court ruled Plaintiffs' action was barred by res judicata and the one-year statute of limitations for attorney malpractice claims. We affirm on the statute of limitations ground and do not address res judicata.

## FACTS[1] AND PROCEDURAL BACKGROUND

In November 2007, Plaintiffs purchased an apartment building in Van Nuys, California, comprised of four 1-bedroom rental units of approximately 530 square feet each. At the time of purchase, one of the units had five occupants—three adult tenants who were listed in the rental agreement (the Tenants), and a 16-year-old boy and infant girl, who were believed to be two of the Tenants' minor children. In March 2008, Plaintiffs learned that a sixth person had moved into the unit—an 11-year-old boy who also was the son of one of the Tenants.

Upon learning of the sixth occupant, Plaintiffs became concerned about overcrowding, and sought legal advice from Block. Block advised Plaintiffs that the unauthorized occupants violated the rental agreement, the overcrowding violated state and county housing laws, and these violations were grounds for termination of the tenancy and eviction.

---

[1] Because this matter comes to us on demurrer, our statement of facts is based upon the allegations of the operative first amended complaint. (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.) "[W]e treat as true all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] However, we disregard allegations that are contrary to law or to facts that may be judicially noticed [citation] or are contradicted by the express terms of an exhibit incorporated into the complaint. [Citation.]" (*Freeman v. San Diego Assn. of Realtors* (1999) 77 Cal.App.4th 171, 178, fn. 3.)

On March 31, 2008, Plaintiffs retained Block to represent them with respect to termination of the tenancy and any necessary unlawful detainer proceedings. Among other things, the retainer agreement provides: "The Client herewith retains [Block] in this Unlawful Detainer Proceeding. Client acknowledges and agrees that attorney's representation of client shall not include any obligation to settle, negotiate, obtain a waiver of or represent Client in regard to any claims that Client's tenant(s) may have or may hereafter raise against Client in any affirmative action by the tenant." Plaintiffs allege Block did not explain the meaning or import of the sentence referring to "any affirmative action by the tenant."

On March 31, 2008, Block prepared and served a "Notice to Perform Conditions And Covenants Or Quit" (Notice to Quit), demanding the unauthorized occupants vacate the unit within three days. On April 7, 2008, Plaintiffs received a letter from the Los Angeles Department of Housing (LADH). The LADH letter stated the Notice to Quit was defective and in violation of the Los Angeles Rent Stabilization Ordinance, which prohibits a landlord from bringing an action to limit occupancy when a "first or second minor dependent child has been added to the tenancy." In response to their inquiry about the letter, Block assured Plaintiffs that the Notice to Quit was not defective.

On April 18, 2008, Block filed an unlawful detainer action on behalf of Plaintiffs, alleging the Tenants had failed to remove the unauthorized occupants from the unit in violation of the rental agreement. Block advised Plaintiffs that the complaint stated a viable cause of action and Plaintiffs had sufficient evidence to prevail at trial.

On June 4, 2008, just prior to trial, Block advised Plaintiffs not to go forward and to settle the unlawful detainer action. Initially, Plaintiffs objected to the settlement, citing Block's prior advice about the viability of their claim and the possibility of obtaining a judgment for unpaid rent if they went to trial. Block nevertheless insisted, and Plaintiffs ultimately agreed to settle the action by entering into a stipulated judgment that required the Tenants to vacate the unit in exchange for a release of Plaintiffs' claims for unpaid rent.

3

On September 26, 2008, the Tenants filed a complaint against Plaintiffs, alleging multiple violations of federal and state fair housing and civil rights laws arising from the termination of their tenancy and subsequent eviction (the Tenant Action).

On December 7, 2010, Plaintiffs filed a cross-complaint against Block in the Tenant Action, seeking equitable indemnity under federal and state housing statutes for aiding and abetting Plaintiffs' alleged housing discrimination.

On February 3, 2012, Block filed a motion for summary judgment in the Tenant Action, asserting Plaintiffs' cross-complaint amounted to a legal malpractice action, which was barred by the applicable statute of limitations.  In his moving papers, Block's attorney argued, "Once the Tenants appeared in the U.D. Action, Block had only one of two options to accomplish Barna's directive to evict the tenants, i.e., he could proceed to trial and take the risk that his client might lose, or he could help negotiate a settlement that would take the risk of further litigation out of play and would restore possession of the premises back to Barna."  Block also submitted a supporting declaration, wherein he asserted the "primary goal" of evicting the Tenants and restoring possession to Barna was achieved by the stipulated judgment in the unlawful detainer action.  Block's declaration did not discuss the risk of losing at trial; however, both the moving papers and the declaration referred to the clause in the retainer agreement that excluded from the scope of Block's representation "any obligation to settle negotiate, [or] obtain a waiver of . . . any claims that Client's tenant(s) may have or may hereafter raise against Client in any affirmative action by the tenant."

On April 13, 2012, the court granted Block's motion and entered judgment for Block on Plaintiffs' cross-complaint in the Tenant Action.  The court found that Plaintiffs' cross-complaint sought indemnification for the alleged discriminatory eviction, but Block's purported wrongful acts amounted to providing Plaintiffs with bad legal advice.  The court concluded Block's alleged professional negligence was distinct from Plaintiffs' alleged discriminatory eviction and, consequently, Block could not be held liable for indemnification as a joint tortfeasor.

4

On March 30, 2012, while Block's motion for summary judgment in the Tenant Action was pending, Plaintiffs filed the instant action against Block. In their operative complaint, Plaintiffs alleged Block knew (1) the Notice to Quit was defective in that it violated the Los Angeles Rent Stabilization Ordinance, and (2) the unlawful detainer action could expose Plaintiffs to a lawsuit by the Tenants for housing discrimination and unlawful termination of tenancy. Despite such knowledge, Plaintiffs alleged Block failed to advise them of the potential liability and intentionally concealed the fact that they could be exposed to subsequent litigation by the Tenants based on the unlawful detainer action. Further, Plaintiffs alleged they were unable to discover the purported concealment until they were served with Block's declaration in the Tenant Action. Based on these allegations, Plaintiffs asserted three causes of action for breach of fiduciary duty, legal malpractice and fraud against Block. With respect to each cause of action, Plaintiffs claimed damages in the form of emotional distress and legal expenses incurred to defend the Tenant Action.

On August 29, 2012, Block demurred to the complaint on res judicata and statute of limitations grounds. With respect to res judicata, Block argued Plaintiffs' claims in the instant action were based on the same core set of facts alleged in their cross-complaint and, therefore, the judgment in the Tenant Action should be given preclusive effect. As for the statute of limitations, Block argued Plaintiffs necessarily discovered his alleged malpractice when they were sued by the Tenants in September 2008, and Plaintiffs' claims accrued when they began incurring legal fees to defend the Tenant Action shortly thereafter. Even if the Tenants' complaint was not enough to put Plaintiffs on inquiry notice, Block argued Plaintiffs were undeniably aware of the alleged malpractice when they filed their cross-complaint against him in December 2010. In either event, Block argued Plaintiffs' claims were barred by the one-year statute of limitations for attorney malpractice actions.

5

In their opposition, Plaintiffs argued their cross-complaint was for indemnity and had been dismissed on the ground that Block was not a joint tortfeasor with respect to the Tenants' housing discrimination claims. As such, they contended the prior judgment did not resolve an "identical" issue or claim and should not be given preclusive effect. With respect to the statute of limitations, Plaintiffs argued they were unaware of Block's alleged concealment until he purportedly admitted in his summary judgment motion that Plaintiffs "fac[ed] the option of losing at trial." Additionally, Plaintiffs claimed they "only became aware of BLOCK'S concealment of [Plaintiffs] exposure to a subsequent derivative action by [the Tenants] in February 2012 when they received a declaration signed by BLOCK stating that the Retainer Agreement expressly limited BLOCK'S responsibility for actions taken by tenants against Plaintiffs." Because Block had not "explained the nature of the limitation in the scope of representation," Plaintiffs argued they were unable to reasonably discover the risk of being sued by the Tenants.

On September 27, 2012, the trial court sustained Block's demurrer without leave to amend. In its written order, the court found the claims asserted in the instant action and Plaintiffs' cross-complaint in the Tenant Action involved the same primary right and, therefore, the prior judgment should be given preclusive effect. The court also ruled the claims were barred by the applicable statute of limitations because Plaintiffs were necessarily aware of the facts giving rise to their claims when they were served with the complaint in the Tenant Action in 2008. In that regard, the court rejected Plaintiffs' contention that Block's declaration disclosed new information that Plaintiffs could not have previously discovered through the exercise of reasonable diligence.

On October 17, 2012, Plaintiffs filed a motion for reconsideration of the ruling sustaining Block's demurrer. The motion sought leave to amend to "allege defendant's fraudulent concealment of potential tenant claims." The trial court denied the motion as untimely, and also found Plaintiffs failed to present new facts or law in support of the motion. Plaintiffs appealed.

6

## DISCUSSION

1. *Standard of Review*

On an appeal following the sustaining of a demurrer, application of the statute of limitations is purely a legal question; accordingly, we review the lower court's ruling de novo. (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191.) We must take the allegations of the operative complaint as true and consider whether the facts alleged establish Plaintiffs' claims are barred as a matter of law. (*Ibid.*; see also *Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 810–811.) However, we "do not assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed." (*Dutra v. Eagleson* (2006) 146 Cal.App.4th 216, 221.)

"When determining which statute of limitations applies to a particular action, a court considers what the principal purpose or 'gravamen' of the action is, rather than the form of action or the relief demanded." (*Yee v. Cheung* (2013) 220 Cal.App.4th 184, 194; *Day v. Greene* (1963) 59 Cal.2d 404, 411; *Pointe San Diego Residential Community, L.P. v. Procopio, Cory, Hargreaves & Savitch, LLP* (2011) 195 Cal.App.4th 265, 274.) "Which statute of limitations governs in this situation is a legal issue subject to our de novo review." (*Vafi v. McCloskey* (2011) 193 Cal.App.4th 874, 880.)

2. *Plaintiffs' Action Is Barred by Section 340.6's One-Year Limitations Period*

Under Code of Civil Procedure[2] section 340.6, subdivision (a), "[a]n action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first." The limitations period is tolled until the plaintiff suffers actual loss or damage resulting from the alleged misconduct; while the attorney continues to represent the client in the same matter; or if the plaintiff is under

---

[2] Further statutory references are to the Code of Civil Procedure.

7

a legal or physical disability that restricts the plaintiff's ability to commence legal action. (§ 340.6, subds. (a)(1), (2) & (4).) Additionally, section 340.6, subdivision (a)(3) tolls the four-year repose period during the time when "[t]he attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney."

As a predicate matter, we conclude section 340.6 supplies the applicable limitations period for all three causes of action asserted in the complaint—breach of fiduciary duty, legal malpractice, and fraud. This is because the gravamen of each claim is Block's alleged failure to advise Plaintiffs of the risk that the Tenants would bring a legal action based on the eviction proceedings—in other words, an omission arising in the performance of Block's professional services. (§ 340.6, subd. (a).) For their part, Plaintiffs do not dispute that their breach of fiduciary duty and fraud claims are subject to section 340.6. Indeed, Plaintiffs acknowledge that their "action for breach of fiduciary duties and intentional concealment [fraud] arises from the language of the retainer agreement and *the failure of defendant attorney to advise plaintiffs of the risk of adverse consequences arising from attorney defendant's recommended course of action.*"[3] (Italics added.)

Plaintiffs concede they discovered Block failed to advise them of their potential liability when the Tenants sued them in September 2008. Nevertheless, Plaintiffs contend the statute of limitations did not begin to run at that time because they were unaware of Block's alleged "intentional concealment" of such liability until they received his summary judgment declaration in February 2012. As Plaintiffs put it, we should "find a distinction between defendant's *failure to protect plaintiffs from a derivative cause of*

---

[3]     Additionally, in their reply brief, Plaintiffs characterize their third cause of action as a claim for "Constructive Fraud" and assert the claim alleges "each of the elements required to state a cause of action for *legal malpractice* based on a theory of constructive fraud." (Italics added.) "The actual fraud exception to the one-year statute of limitations under Code of Civil Procedure section 340.6, subdivision (a) does not apply to causes of action for constructive fraud." (*Lockton v. O'Rourke* (2010) 184 Cal.App.4th 1051, 1065, fn. 6.)

*action*, a fact which plaintiffs were aware at the time [the Tenants] brought [their] discrimination action[,] and defendant's *intentional concealment of plaintiffs' exposure to a derivative action*, [of] which plaintiff[s] [were] not aware until February of 2012, when defendant raised the obscure language in defendant's retainer agreement" in his summary judgment declaration. (Italics added.) Assuming this is a genuine distinction, it is not one that makes any difference for the accrual of Plaintiffs' claims.

Under section 340.6, " 'a cause of action for legal malpractice accrues when the client discovers or should discover the facts essential to the malpractice claim, and suffers appreciable and actual harm from the malpractice. Discovery of any appreciable and actual harm from the attorney's negligent conduct establishes a cause of action and begins the running of the limitations period.' "[4] (*Samuels v. Mix* (1999) 22 Cal.4th 1, 11 (*Samuels*).) "[I]n a professional malpractice context, accrual does not await '[plaintiff's] discovery [that the facts constituting the wrongful act or omission] constitute professional negligence, i.e., [his] discovery that a particular legal theory is applicable based on the known facts.' [Citation.] ' "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action . . . if one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period." [Citations.]' " (*Curtis v. Kellogg & Andelson* (1999) 73 Cal.App.4th 492, 501 (*Curtis*); *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 898.)

---

[4] For purposes of the tolling provision in section 340.6, subdivision (a)(1), "[t]he test for actual injury . . . is whether the plaintiff has sustained any damages compensable in an action . . . ." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 751.) Under this standard, "the fact of damage, rather than the amount, is the critical factor." (*Id.* at p. 752.) Thus, a plaintiff sustains "actual injury" when he or she incurs attorney fees to rectify the problem caused by the prior attorney's alleged negligence. (*Id.* at pp. 750-752.) "[O]nce the plaintiff suffers actual harm, neither difficulty in proving damages nor uncertainty as to their amount tolls the limitations period." (*Id.* at p. 752.) Here, the complaint concedes Plaintiffs suffered appreciable harm when they began incurring "legal expenses in defense of [the Tenant Action]" in September 2008.

Returning to Plaintiffs' proffered distinction, in the instant case, it makes no difference whether Block failed to recognize the risk of the Tenant Action and neglected to advise Plaintiffs, or that he recognized the risk and intentionally concealed it from Plaintiffs. For purposes of accrual, Plaintiffs knew Block committed the alleged professional misconduct—i.e., not advising Plaintiffs of their potential liability to the Tenants—in September 2008, when Plaintiffs were served with the Tenants' complaint and began incurring legal fees to defend the action.

Indeed, assuming the truth of Plaintiffs' allegation that Block intentionally concealed a known risk, once Plaintiffs were sued, they certainly were on notice of the need to investigate the circumstances of Block's alleged professional misconduct.[5] At that point, a reasonably diligent person in Plaintiffs' position would have reviewed the retainer agreement and discovered the purportedly "obscure language" that Plaintiffs claim prompted them to file the instant action.[6] In any event, regardless of whether the retainer agreement shed any more light on the nature of Block's alleged misconduct, there can be no dispute about when Plaintiffs' claims accrued. Once Plaintiffs were served in the Tenant Action, they were undeniably aware that Block had failed to advise them of the risk they could be sued. That Plaintiffs may not have known all the circumstances surrounding Block's omission makes no difference for the accrual of their

---

[5] Insofar as Plaintiffs hope to invoke section 340.6, subdivision (a)(3)'s tolling provision for the time during which the attorney "willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney," we note that provision applies only to section 340.6's repose period—that is, the four-year period that runs from the date of the wrongful act or omission, regardless of whether the plaintiff has discovered the attorney's misconduct. (See § 340.6, subd. (a)(3) ["this subdivision shall toll only the four-year limitation"].) Subdivision (a)(3) does not apply to the one-year period that runs from the date the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission. It is the one-year period that bars Plaintiffs' claims here.

[6] We agree with the trial court's observation concerning the dubiousness of the charge that Block concealed something disclosed in a retainer agreement that Plaintiff Barna presumably read before signing. Be that as it may, insofar as the claim is barred by the statute of limitations, we need not address the sufficiency of Plaintiffs' allegations.

10

claims. (See *Samuels, supra,* 22 Cal.4th at p. 11; *Curtis, supra,* 73 Cal.App.4th at p. 501.)

Because Plaintiffs' claims accrued as a matter of law when they were served with the Tenants' complaint and began incurring legal defense fees in 2008, the trial court properly concluded their lawsuit against Block—filed four years later—was barred by section 340.6's one-year limitation period.

3. *Plaintiffs' Motion for Reconsideration Fails to Demonstrate the Complaint Can Be Amended*

On September 27, 2012, the trial court served notice of the order sustaining Block's demurrer. On October 17, 2012, Plaintiffs filed a motion for reconsideration seeking leave to amend to "allege defendant's fraudulent concealment of potential tenant claims." We agree with the trial court's conclusion that the motion was untimely. (See § 1008 [a motion for reconsideration must be made "within 10 days after service upon the party of written notice of entry of the order"].)

But even if we consider the motion in assessing whether the complaint could be amended (see *Hendy v. Losse* (1991) 54 Cal.3d 723, 742), we still must conclude that the action is barred by the statute of limitations. To begin, we agree with the trial court that Plaintiffs failed to present new facts. (See § 1008 [a motion for reconsideration must be "based upon new or different facts, circumstances, or law"].) Notwithstanding this requirement, Plaintiffs' motion simply reiterated the same allegations about their purported discovery of Block's intentional concealment when Block "served his declaration stating that he had no liability for exposing plaintiffs to tenant's ruinous litigation." As we have discussed, even if Block intentionally concealed Plaintiffs' potential liability, Plaintiffs necessarily learned they had been harmed by this misconduct when they were sued by the Tenants. Nothing that Plaintiffs have alleged or could allege can overcome this critical fact concerning the accrual of their claims. The trial court properly denied leave to amend. (See *id.*, at p. 742.)

11

**DISPOSITION**

The judgment is affirmed.  Defendant Dennis Block is awarded costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**



KITCHING, J.

We concur:



KLEIN, P. J.



ALDRICH, J.